SMITH-GROH, INC., ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE
TOWN OF GREENWICH
(AC 22817)

Foti, West and Dupont, Js

---

Argued March 26—officially released July 22, 2003

*Robert A. Fuller*, for the appellant (named plaintiff).

*Haden P. Gerrish*, assistant town attorney, for the appellee (named defendant).

*Jane D. Hogeman,* for the appellee (defendant Gateway Park Associates, LLC).

*Opinion*

DUPONT, J. The plaintiff Smith-Groh, Inc.,[1] appeals from the judgment of the trial court dismissing its appeal from the decision of the planning and zoning commission of the town of Greenwich,[2] which denied its application for final site plan approval and a special permit to construct an apartment building in a residential-planned housing design-small unit zone (R-PHD-SU). The defendants are the planning and zoning commission (commission) and Gateway Park Associates, LLC (Gateway), an owner of property that abuts the property of the plaintiff.[3]

The plaintiff claims that (1) the commission's tie vote was tantamount to an approval of its application, (2) the court improperly considered the town planner's letter of reasons given for the denial and (3) the R-PHD-SU zone regulations applicable to the plaintiff's proposed apartment building do not require designated "affordable" units.[4] The primary issue in this appeal is

[1] An additional plaintiff, Pemberwick Apartments, LLC, was found by the trial court to lack aggrievement and is not involved in the appeal to this court. We therefore refer in this opinion to Smith-Groh, Inc., as the plaintiff.

[2] The Appellate Court granted the plaintiff's petition for certification to review the court's judgment on February 20, 2002. See General Statutes §§ 8-8 and 8-9.

[3] The planning and zoning commission of the town of Greenwich on appeal to this court adopted the brief of Gateway.

[4] Throughout the history of this case the parties, the commission and the trial court have referred to the units in question interchangeably as "affordable," "moderate income housing," "moderate income dwelling" or "reasonable cost" units. We note, however, that the term "affordable" units in no way implicates Connecticut's affordable housing program, General Statutes § 8-30g et seq., which was not in effect when Greenwich adopted the R-PHD-SU zone. The "affordable" units refer to five proposed units in the plaintiff's prior site plan applications, which were proposed to be regulated in accordance with § 6-110 (g) of the Greenwich building zone regulations. Section 6-110 (g) units are termed "moderate income dwelling units."

whether the plaintiff's application for site plan approval and a special permit met "all" of the purposes of the R-PHD-SU zone.[5]

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In 1989, the prior owner and prospective lessees of the property applied for a zone change, from a R-6 zone to a R-PHD-SU zone, as well as special permit and site plan approval. The commission approved the zone change and the site plan, and granted a special permit.[6] The apartment complex was not constructed within three years, and the site plan approval and special permit became null and void. See Greenwich Building Zone Regs., §§ 6-14.1 (e) (site plan) and 6-17 (f) (special permit).[7]

In August, 1998, Pemberwick Apartments, LLC (Pemberwick), the contract purchaser of the property,

---

[5] Section 6-62 (c) of the Greenwich building zone regulations, entitled "Residential-Planned Housing Design-Small Unit Zone (R-PHD-SU); Purpose," provides in relevant part that the commission "may permit residential development . . . when all of the following purposes are to be accomplished:

"(1) To implement the letter and intent of the Town Plan of Development;

"(2) To maintain and reinforce the Town's predominantly residential character;

"(3) To conserve and preserve land to assure that its development will best maintain and enhance the appearance, character and natural beauty of an area;

"(4) To provide attractive, decent and suitable housing at reasonable cost for those who live or work in Town;

"(5) To permit the construction of residential units that may be subsidized by public and/or private funds."

[6] The site plan and special permit called for the construction of a twenty-seven unit apartment complex with five units designated as "affordable" units and regulated by § 6-110 (g) of the Greenwich building zone regulations.

[7] Section 6-14.1 (e) of the building zone regulations provides: "Any Site plan approval granted by the Commission on which construction has not started within a period of three years shall become null and void."

Section 6-17 (f) of the building zone regulations provides: "Any special permit granted by the Commission and not exercised within a period of three (3) years from date of decision shall become null and void."

submitted an application for a special permit and "final" site plan application.[8] The commission considered the application at public hearings held on November 17 and December 8, 1998, and at its regular meeting on January 7, 1999. The commission reviewed the site plan application as preliminary and advised the plaintiff to proceed to a final site plan subject to twenty modifications. The relevant modifications required for final site plan approval included a reduction in the height and bulk of the building and the identification of, and the deed restrictions on, the five "affordable" units.[9]

In August, 1999, Pemberwick revised its preliminary application, and submitted a final site plan and special permit application for the commission's approval. On September 3, 1999, the plaintiff became the record owner of the property. The commission considered the application at a public hearing on October 26, 1999, and regular meeting on December 8, 1999. At the December meeting, the commission denied the application. In its December 22, 1999 revised letter, the commission stated as reasons for the denial that the reduction in height and bulk of the proposed building was not substantial enough to satisfy the requests of the commission in its previous letter, the average size of the individual apartments did not meet the requirements of the zone, and there was "reasonable doubt" that the units would meet the requirements of § 6-62 (4) and (5) of the building zone regulations.[10]

[8] The application proposed a building similar to the building previously proposed and approved in 1989. Again, it contained the proposal of five "affordable" units regulated by § 6-110 (g) of the building zone regulations.

[9] Gateway appealed from the preliminary approval to the Superior Court. The appeal was dismissed. *Gateway Park Associates, LLC* v. *Planning & Zoning Commission,* Superior Court, judicial district of Stamford-Norwalk, Docket No. 170332 (October, 1, 2001) (*Gateway I*).

[10] Both the plaintiff and Gateway appealed from that decision to the Superior Court. See *Smith-Groh, Inc.* v. *Planning & Zoning* Commission, Superior Court, judicial district of Stamford-Norwalk, Docket No. 176008 (October 1, 2001) (*Smith-Groh I*); *Gateway Park Associates, LLC* v. *Planning & Zoning Commission,* Superior Court, judicial district of Stamford-

The plaintiff submitted a second final site plan and special permit application in January, 2000, which application is the subject of this appeal. This application was considered at a public hearing on February 15, 2000, and a special meeting on March 13, 2000. Following discussion at the special meeting, a motion to approve the application did not carry. Two commission members voted to approve the motion, two voted to deny the motion and one abstained. The concerns raised at the meeting related to the regulation requirements of the R-PHD-SU zone as to "reasonable cost" housing and the size of the building.

The commission's decision was published in a newspaper on March 22, 2000.[11] On March 24, 2000, the town planner sent a denial letter to the plaintiff and copies to the commission members. The written letter outlined several reasons for the denial. Both the plaintiff and Gateway appealed from the commission's decision to the Superior Court.[12] The court dismissed the plaintiff's

Norwalk, Docket No. 176155 (October, 1, 2001) (*Gateway II*).

These cases were consolidated with *Gateway Park Associates, LLC* v. *Planning & Zoning Commission*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 170332 (October, 1, 2001) (*Gateway I*). See footnote 9. The court dismissed all three appeals. In *Gateway II*, Gateway claimed that the R-PHD-SU zone designation had expired with the expiration of the site plan and special permit. In dismissing the appeal, the court concluded that the R-PHD-SU zone designation was still in effect. In *Smith-Groh I*, the court concluded that the record supported the commission's decision. Having decided as it did in *Gateway II* and *Smith-Groh I*, the court dismissed *Gateway I* as moot.

[11] See General Statutes § 8-3 (g).

[12] The defendant claimed, as it had done previously, in *Gateway Park Associates, LLC* v. *Planning & Zoning Commission*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 170332 (October, 1, 2001) (*Gateway I*), and *Gateway Park Associates, LLC* v. *Planning & Zoning Commission*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 176155 (October, 1, 2001) (*Gateway II*), that the R-PHD-SU zone had expired with the special permit and site plan applications. Although the court noted that it had decided the issue in *Gateway II*, the court addressed the merits and dismissed the appeal because the court concluded that the R-PHD-SU zone had not expired. Gateway did not petition this court for certification to appeal for review of that conclusion.

appeal because the plaintiff's application failed to provide housing at a "reasonable cost" pursuant to § 6-62 (c) (4) of the building zone regulations.[13] We now consider the plaintiff's appeal.[14]

## I

## THE TIE VOTE

The plaintiff first claims that its site plan was approved automatically by virtue of General Statutes § 8-3 (g).[15] It argues that § 8-3 (g) requires an affirmative denial of the application and that because of the tie vote on the motion to approve, there was not such a denial. Relying on *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, 211 Conn. 331, 559 A.2d 196 (1989), the plaintiff further argues that although § 8-3 (g) applies only to site plans, its special permit was approved because it was inseparable from the site plan. The defendants argue that according to parliamentary procedure, a tie vote on a motion to approve amounts to a denial and, therefore, the application was

We note, however, that if the zone expired with the site plan and special permit, the R-PHD-SU zone regulations would not apply, and this appeal would be rendered moot. Because mootness implicates the court's subject matter jurisdiction and is, therefore, a threshold matter to resolve, we briefly address the issue. See *State* v. *Arpi*, 75 Conn. App. 749, 751, 818 A.2d 48 (2003). We affirm the well reasoned opinion of the trial court and conclude that the R-PHD-SU zone continues to apply to the property at issue.

[13] Section 6-62 (c) of the building zone regulations provides in relevant part: "The Planning and Zoning Commission . . . may permit residential development . . . when all of the following purposes are to be accomplished . . .

"(4) To provide attractive, decent and suitable housing at reasonable cost for those who live or work in Town . . . ."

[14] The basic allegations of the complaint, still pressed in the plaintiff's brief filed in this court, are that the commission acted illegally, arbitrarily and in abuse of its discretion in denying the special permit and final site plan application. The claims raised on appeal are included within the allegations.

[15] General Statutes § 8-3 (g) provides in relevant part that "[a]pproval of a site plan shall be presumed unless a decision to deny or modify it is rendered within [sixty-five days]. . . ."

denied within the specified period in accordance with § 8-3 (g). Additionally, they argue that even if the site plan is deemed approved by virtue of the statute, the special permit was not subject to the automatic approval provisions of § 8-3 (g) and was denied by virtue of the tie vote. We agree with the defendants' latter contention.[16]

Section 8-3 (g) specifically relates only to applications for site plan approval. In this case, the plaintiff was required to, and did, submit a special permit application, which is not inseparable from the site plan application. The plaintiff relies on *SSM Associates Ltd. Partnership*, which held that the special permit application was so inseparable from the site plan application that it, along with the site plan application, was deemed approved under the automatic approval provision of § 8-3 (g). Id., 337; see also *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, 253 Conn. 183, 189–90, 757 A.2d 1052 (2000).

In *Center Shops of East Granby, Inc.*, however, our Supreme Court strictly limited *SSM Associates Ltd. Partnership* to its facts because the use sought was a permitted use, and the parties stipulated that the site plan and special permit applications were inseparable. *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 253 Conn. 190–92. The court went on to hold that "when a site plan is separable from its accompanying documents and the special permit application is for a use not permitted as of right, the provisions of § 8-3 (g) are not applicable and the time constraints specified in [General Statutes] § 8-7d do not control." *Center Shops of East Granby, Inc.* v. *Planning & Zoning Commission*, supra, 193. We, therefore, conclude that regardless of the status of the site plan, the special permit could not be approved automatically.

---

[16] Because of our conclusion with respect to that issue, it is unnecessary to consider statutory interpretation of General Statutes § 8-3 (g).

When voting on the motion to approve the application, two members voted in favor of the motion, two members voted against the motion and one member abstained. This tie vote on the motion to approve is tantamount to a rejection of the application. *Merlo* v. *Planning & Zoning Commission*, 196 Conn. 676, 683, 495 A.2d 268 (1985); see also *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 533–34, 525 A.2d 940 (1987); *Lupinacci* v. *Planning & Zoning Commission*, 153 Conn. 694, 696, 220 A.2d 274 (1966); *Hall* v. *Planning & Zoning Board*, 153 Conn. 574, 576, 219 A.2d 445 (1966); *In re Reynolds*, 170 Vt. 352, 355–57, 749 A.2d 1133 (2000) (in determining whether majority has voted for approval, abstention is not counted as vote for approval). Therefore, we conclude that the application for the special permit was denied.

## II

### COLLECTIVE STATEMENT

The plaintiff claims that the reasons stated in the March 24, 1999 letter of the town planner cannot be considered in reviewing whether the application for site plan approval and a special permit was denied properly. It argues that the letter contained reasons not discussed, or voted on, by the commission. The plaintiff further claims that because individual commission members stated their reasons for voting against the application on the record,[17] a reviewing court is not required to search the record for alternate reasons to uphold the commission's decision. The defendants agree that the letter was not a collective statement of the commission's decision. They argue, however, that a

---

[17] One commission member voted to deny the application because the plaintiff had not sufficiently complied with the condition to reduce the bulk of the building. A second commission member voted to deny the application because she did not believe that the plaintiff had met the "reasonable cost" requirement of the regulation.

reviewing court must go beyond the record to determine whether there were any grounds to uphold the commission's decision. We agree that the letter cannot be considered as the commission's collective reasons for the denial, but we conclude that we would be required to search the record for reasons for the denial if those stated by either of the two commission members were insufficient for a denial.

The following additional facts are relevant to the plaintiff's claim. Margus T. Laan, the senior planner for the town of Greenwich, who was present at the public hearing and special meeting, wrote the March 24, 2000 letter to the plaintiff's counsel, purporting to state the reasons for the commission's denial of the plaintiff's application. The senior planner was the only individual to sign the letter, and there is no indication in the record that the letter was written at the direction of, or adopted by, the commission. In fact, the commission received the letter only as a result of the "cc" notation at the end of the letter. Although the reasons outlined in the letter were discussed by the commission during either the public hearing or the special meeting, the planner could not speak for the commission. Not even the chairman of a zoning entity can speak for a zoning commission. *Grasso* v. *Zoning Board of Appeals*, 69 Conn. App. 230, 237–38, 794 A.2d 1016 (2002). The commission had a mandatory statutory duty to determine, as a commission, what the disposition of the plaintiff's application should be. Id., 248.

Section 8-3 (g) provides in relevant part that "[a] decision to deny . . . a site plan shall set forth the reasons for such denial . . . ." General Statutes § 22a-109 (f) provides in relevant part that "[t]he zoning commission shall set forth the reasons for any decision to deny . . . a coastal site plan submitted under this sec-

tion. . . ."[18] An agency cannot deny a site plan for subjective reasons that have no relationship to zoning regulations. *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 469, 778 A.2d 61 (2001). Case law generally has required that the "reasons" be a formal, collective, official statement. See *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 513–14, 636 A.2d 1342 (1994).

Thus, the first question is whether the letter constituted a formal, collective, official statement of the commission. None of the commission members signed the letter. The letter was dated more than ten days following the special meeting denying the application and two days after the publication of the denial. It also contained many reasons not stated by the two commission members for their denial of the application. On the basis of those facts, we conclude that the letter was not a collective statement of the commission.

We next consider the individual statements of the commissioners made during the course of the special meeting on March 15, 2000. "[I]individual reasons given by certain members of the commission [do] not amount to a formal, collective, official statement of the commission . . . and are not available to show the reason[s] for, or the ground[s] of, the [commission's] decision." (Citation omitted; internal quotation marks omitted.) Id., 514; see also *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 546 n.15, 600 A.2d 757 (1991) (not appropriate for reviewing court to attempt to glean such formal, collective statement from minutes of discussion by commission members prior to commission vote). We conclude that the individual reasons

---

[18] A coastal site plan was required for the subject property. See General Statutes § 22a-94.

given by commission members were not a formal, collective, official statement.[19]

Therefore, we must consider this case under the "well settled principle of judicial review of zoning decisions that where the commission has failed to state its reasons, the court is obligated to search the record for a basis for its action." *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, supra, 220 Conn. 546 n.15. The search is conducted against the backdrop of the particular regulation under which the plaintiff sought approval of its application.

The court concluded that the record supported the commission's denial of the plaintiff's application because it did not meet the R-PHD-SU[20] zone purpose

---

[19] Even if the letter or individual statements were sufficient as reasons under the statutes, we still would have authority to search the record. "Notwithstanding . . . statutory language, our case law clearly requires the trial court, in appeals from planning and zoning authorities, to search the record to determine the basis for decisions made by those authorities." *Gagnon* v. *Inland Wetlands & Watercourses Commission*, 213 Conn. 604, 607–608, 569 A.2d 1094 (1990); see also T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) pp. 473–74 (under statute, no enforcement sanction against commission, and therefore, Connecticut courts have consistently not required formal collective statement of reasons from commission for its decision).

[20] Section 6-62 of the building zone regulations, entitled "Residential-Planned Housing Design-Small Unit Zone (R-PHD-SU); Purpose," provides:

"(a) The intent of this Article concerning residential development is to encourage attractive, safe, decent and sanitary housing for all Town residents or employees, present and future, without regard to race, color, creed, national origin or economic status.

"(b) The intent of this Article, in addition to the above, is to permit under specific conditions indicated herein, a type of residential development that will serve the housing needs of those Town residents and employees who seek small residential units at reasonable cost.

"(c) The Planning and Zoning Commission, upon application in the manner prescribed herein, after a public hearing, may permit residential development that conforms to the standards and requirements described herein when all of the following purposes are to be accomplished:

"(1) To implement the letter and intent of the Town Plan of Development;

"(2) To maintain and reinforce the Town's predominantly residential

of providing "housing at a reasonable cost . . . ." Building Zone Regs., § 6-62 (c) (4). Before we engage in a search of the record to discern whether there was a valid reason to support the commission's denial, we set forth general principles governing site plan and special permit review procedures.

Sections 6-101 (d) and 6-13 of the building zone regulations required the plaintiff to obtain special permit and site plan approval for its proposed multiunit apartment building within the R-PHD-SU zone. As part of the special permit approval procedure, "it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Internal quotation marks omitted.) *Raymond* v. *Zoning Board of Appeals*, 76 Conn. 222, 228, 820 A.2d 75, cert. denied, 264 Conn. 906, 826 A.2d 177 (2003); see also Building Zone Regs., § 6-17 (a); T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 175.

"The basic rationale for the special permit . . . is that while certain land uses may be generally compatible with the uses permitted as of right in a particular zoning district, their nature is such that their precise location and mode of operation must be individually regulated . . . ." T. Tondro, supra, p. 175; see also *Barberino Realty & Development Corp.* v. *Planning & Zoning*, 222 Conn. 607, 612–13, 610 A.2d 1205 (1992). The

character;

"(3) To conserve and preserve land to assure that its development will best maintain and enhance the appearance, character and natural beauty of an area;

"(4) To provide attractive, decent and suitable housing at reasonable cost for those who live or work in Town;

"(5) To permit the construction of residential units that may be subsidized by public and/or private funds."

requirements for a special permit are outlined in the zoning regulations of the Greenwich municipal code [§ 6-17], and the commission may not impose additional conditions that are not within the regulations. See T. Tondro, supra, pp. 178–79; see also *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission,* 72 Conn. App. 502, 506, 806 A.2d 77 (although commission does not have discretion to deny special permit when proposal meets standards, it does have discretion to determine whether proposal meets standards in regulations), cert. granted on other grounds, 262 Conn. 919, 812 A.2d 861 (2002). "As a matter of law, general considerations enumerated in the zoning regulations are an adequate basis for denying an application for a special permit . . . ." *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission,* supra, 507.

The use in this case is small residential units in a building no more than forty feet in height. According to the minutes of the commission in March, 1970, establishing the R-PHD-SU zone, the nature of the use and mode of operation must conform to certain purposes. The residential development was designed to meet the needs of town residents at differing stages of their life cycles, namely, housing other than single-family detached homes. The purpose was to provide small residential units so that those who live or work in Greenwich could obtain "small residential units at reasonable cost."

"[A] site plan is an administrative review procedure that assists in determining compliance of an underlying development proposal with zoning regulations." T. Tondro, supra, p. 184; see also *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission,* 15 Conn. App. 561, 566, 545 A.2d 602 (1988), aff'd, 211 Conn. 331, 559 A.2d 196 (1989). "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning . . . regulations. . . ." General Statutes

§ 8-3 (g). A site plan and special permit application aid zoning agencies in determining the conformity of a proposed building or use with specific provisions of the regulations. *Grasso* v. *Zoning Board of Appeals*, supra, 69 Conn. App. 244.

The defendants' chief argument is that the plaintiff, in its latest application, did not provide for five "affordable" units. The defendants claim that this omission caused a significant change from earlier proposals that had included a permanent rent restriction for five units and that such designation was integral to the proposed project. The commission's argument appears to rest on the necessity for the plaintiff to continue to provide for the "affordable" units in the latest application or risk denial. The question is whether the manner in which the plaintiff proposes to use its property satisfies the conditions imposed by the regulations, not whether a subsequent application has varied from a prior application. It may be that a new plan, with changes, will succeed although a former failed. A commission is not precluded from granting a subsequent application because a prior application was denied. See id., 246. We conclude that the plaintiff is not bound by the prior applications, which included five "affordable" units. The remaining issue is whether the application that is the subject of this appeal has demonstrated compliance with the regulation as to reasonable cost units.[21]

Because the plaintiff must comply with *all* of the conditions of § 6-62 (c), and the trial court determined that it had not provided, as required in subdivision (4),

---

[21] We are aware of the 1989 decision letter sent to a predecessor of the plaintiff requiring rent regulated units in accordance with § 6-110 (g) of the building zone regulations and that the commission stated that "no building permit shall be issued . . . if the plans did not identify the location of the five deed restricted ['affordable'] units." We do not conclude, however, that subsequent applications for a special permit and site plan had to comply with the 1989 letter for the reasons cited previously.

"attractive, decent and suitable housing at reasonable cost for those who live or work in Town," we first consider that condition. If the plaintiff did not comply with it, the plaintiff cannot comply with *all* the conditions, and we must dismiss its appeal. Sufficient support for one reason to deny the application would result in upholding the commission's action. See *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 618. If the plaintiff did comply with subdivision (4), we would then need to continue to search the record to see if the plaintiff had complied with the rest of the conditions.

The plaintiff argues that the small size of the apartment units satisfies the reasonable cost requirement of § 6-62 (c) (4). The defendants argue that the plaintiff, if approval is given, will have received a density bonus to build a twenty-seven unit dwelling without providing an enforceable agreement to provide a permanent reduced rental cost of a few of those apartments. On the contrary, the defendants claim that smaller sized units cannot always be equated to reasonable cost. The defendants argue that rental cost is based on a unit's proximity to places of employment, shopping, banking, public transportation and aesthetic considerations, and, therefore, not necessarily size alone. The plaintiff argues that the market rental rates for all of the apartments would be reasonable compared to similar sized housing available elsewhere in Greenwich. The arguments of the parties assume that "reasonable cost" is an enforceable and ascertainable standard, but disagree as to whether there was compliance with that standard.

We, however, must first examine whether the regulation is so broad or ill-defined as to make it impossible for any applicant to comply with it. A commission's regulations must be precise enough to give adequate and sufficient notice to the commission, in order that it can enforce the regulations, and to applicants, in

order that they can comply with the regulations. *Ghent v. Planning Commission,* 219 Conn. 511, 518, 594 A.2d 5 (1991). A zoning commission must decide, consistent with its discretion, whether a particular section of a zoning regulation applies and the manner in which it does apply. The commission can decide whether the application meets the standard of the regulation; *Irwin v. Planning & Zoning Commission,* 244 Conn. 619, 627, 711 A.2d 675 (1998); but the standard must be capable of comprehension. We conclude that "reasonable cost" within its context in the regulations is an ascertainable standard.

The interpretation of a regulation is a question of law for which our review is plenary. *Raymond* v. *Zoning Board of Appeals,* supra, 76 Conn. App. 229. A zoning regulation is legislative in nature, and its interpretation involves the principles of statutory interpretation. Id., 234. We seek to determine the meaning of the regulations by looking to the words of the regulation, to the history of its enactment, including the circumstances surrounding its enactment, to the public policy it was designed to implement and to its relationship to other regulations governing the same general subject matter. See *Bhinder* v. *Sun Co.,* 263 Conn. 358, 367, 819 A.2d 822 (2003).

"Reasonable" is a relative adjective that varies with the context in which it is used, and its meaning is affected by the facts of the particular controversy. *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463 (1959). Reasonableness depends on a variety of conditions and circumstances. "Reasonable" should be read to exclude capricious or confiscatory interpretation by a commission of its regulations. See *Public Service Commission* v. *Havemeyer,* 296 U.S. 506, 518, 56 S. Ct. 360, 80 L. Ed. 357 (1936). We must consider the purpose of the particular regulation, the means adopted to achieve it, and the relationship

between the purpose and the means. 16A Am. Jur. 2d, Constitutional Law § 278 et seq. (1998).

A regulation should be as precise as the subject matter requires, and adequate and sufficient enough to allow the commission to perform its obligations. *Sonn* v. *Planning Commission*, 172 Conn. 156, 159, 374 A.2d 159 (1976). As long as the regulations provide a standard that can be applied to all cases of a like nature so as to reduce the likelihood of allowing a zoning agency to act in a capricious manner, the regulations will not be deemed to contain meaningless standards that can lead to unpredictable results. Id., 161–62. A regulation, for example, that requires consideration of the "intensity" of a proposed apartment building is capable of providing a standard to which an applicant can comply. *Felsman* v. *Zoning Commission*, 31 Conn. App. 674, 676–80, 626 A.2d 825 (1993).

On the basis of the scheme of the zoning regulations in this case and the avowed purpose of providing reasonable cost housing that is affordable or moderately priced to those who live or work in the town, the plaintiff needed to show at the public hearing some indication that it would do so. The statement of the plaintiff at the public hearing that some of the units might rent for $1172 per month and that the market rental rates for the units would be reasonable when compared to the more expensive housing ordinarily desired by the more affluent citizens of Greenwich was insufficient for compliance with § 6-62 (c) (4) of the building zone regulations. The plaintiff had to show more. For example, there was no evidence that some type of permanent rent restriction formula would be used to govern rental rates in the future or evidence of the rental cost of comparably sized housing in other zones in Greenwich.

Section 6-62 (b) of the building zone regulations provides in relevant part that the intent of the zone is to

"serve the housing needs of those Town residents and employees who seek small residential units at reasonable cost." Section 6-62 (c) permits residential development that conforms to that standard if the development provides "(4) . . . attractive, decent and suitable housing at reasonable cost for those who live or work in Town" and "(5) . . . that may be subsidized by public and/or private funds."[22]

The legislative history of the R-PHD-SU zone indicates that the regulation's purpose was to provide housing for residents and employees of the town at various cycles of their lives, namely, the young employed or retirees, at a cost commensurate with their financial abilities. The regulation itself speaks to the same purpose; other regulations that govern housing units other than single-family dwellings, such as townhouses, do not include the requirement of reasonable cost.

We have examined the history of the purpose of the regulation as stated in 1970, at the time the regulations were adopted, the words of the regulation itself, the public policy it was designed to implement and other regulations governing the some general subject matter. We conclude that reasonable cost housing for those who live or work in town means more than providing small residential units, and that the plaintiff had to provide evidence of reasonable rental cost and some guarantee of effectuating the regulation to obtain special permit and site plan approval.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[22] Subdivision (5) is not discussed because there was no evidence as to it.