## 109 NORTH, LLC *v.* PLANNING COMMISSION OF THE TOWN OF NEW MILFORD
### (AC 28682)

Gruendel, Robinson and Foti, Js.

---

Argued September 10—officially released November 18, 2008

*Robert H. Hall,* for the appellant (plaintiff).

*D. Randall DiBella,* with whom, on the brief, was *Kent J. Mancini,* for the appellee (defendant).

*Opinion*

GRUENDEL, J. This appeal concerns the application of the automatic approval doctrine. The plaintiff, 109 North, LLC, appeals from the summary judgment on its mandamus action rendered by the trial court in favor of the defendant, the planning commission of the town of New Milford. The plaintiff's principal claim is that the court improperly concluded that the defendant acted on the plaintiff's subdivision application within the time limits prescribed by General Statutes §§ 8-26 and 8-26d. We agree and, accordingly, reverse the judgment of the trial court.

The facts largely are undisputed. The plaintiff, at all relevant times, has owned a parcel of undeveloped land (property) consisting of 210.798 acres in New Milford. This appeal stems from the plaintiff's attempt to subdivide that property.

Chapter 107 of the New Milford zoning regulations permits cluster conservation subdivision districts (CCSD), which are defined as "the division of a parcel of land consisting of 30 or more acres located in an R-80, R-60 or R-40 zone (or any combination thereof) into three or more lots for the purpose of building development and sale of single-family detached residential dwellings and structures on a particular portion or portions of said parcel so that at least [50 percent] of the total gross area of the parcel(s) remains as conservation open space to be used exclusively for passive recreational and/or conservation purposes."[1] New Milford Zoning Regs., c. 107, § 107-020. In July, 2004, the plaintiff

---

[1] The New Milford zoning regulations define R-80, R-60 and R-40 zones as parcels with minimum lot areas of 80,000 square feet, 60,000 square feet and 40,000 square feet, respectively. New Milford Zoning Regs., c. 20, § 20-010.

submitted an application to rezone the property from R-60 and R-80 zoning districts to a CCSD with zoning requirements akin to R-40 zones. Consistent with the requirements of § 107-020, the plaintiff's application proposed 114.694 acres of conservation open space, which constituted 54 percent of the property. On August 19, 2004, the defendant approved that application.[2] On December 14, 2004, the New Milford zoning commission rezoned the property and created "CCSD #2" in which the permitted minimum lot size was 40,000 square feet, the permitted minimum lot frontage was 150 feet and irregular lots with less than 150 feet of frontage also were permitted.

On December 1, 2005, the plaintiff applied to the defendant for approval of its subdivision plan for CCSD #2, known as Walker Brook Farm. The final subdivision plan included seventy-five lots, which it alleged fully conformed to both the zoning requirements of CCSD #2 and the subdivision regulations of New Milford. A public hearing was held on that application, commencing on February 16, 2006, and concluding on May 18, 2006.

At the defendant's July 6, 2006 meeting, commissioner Thomas Morey made a motion (Morey motion) to "modify and approve the [s]ubdivision . . . known as 'Walker Brook Farm' . . . ." The motion included twenty-three detailed "revisions and conditions." The motion failed on a tie vote of two commissioners in favor and two opposed, with one commissioner abstaining. Significantly, the defendant never provided public notice of either Morey's motion on the plaintiff's application or the vote thereon. The official minutes of the

---

[2] The official minutes of the defendant's August 19, 2004 meeting state that the plaintiff sought "to amend the R60 and R80 zones to a [CCSD] . . . basically changing it to what a 40,000-zone and what their district requirements are." The defendant approved the plaintiff's application by a vote of four to one.

defendant's July 6, 2006 meeting state that, following the failure of Morey's motion, the defendant's chairwoman "stated [that] she would rework the motion for the [defendant's] next . . . [m]eeting" without objection.

At the defendant's July 20, 2006 meeting, the plaintiff's application for approval of its subdivision plan again was considered. The official minutes of that meeting state: "[Chairwoman Vivian] Harris recapped the sequence of events from the July 6, 2006 meeting and the legal ramifications of the failed motion to [modify and] approve [the plaintiff's application]. When asked, [chairwoman] Harris stated [that] the reason the failed motion wasn't published in the newspaper was because there were 'many, many questions.' That at least one of the stipulations was illegal, that the [defendant] cannot dictate the size of the lots and stated [that] the members were handed a copy of the motion while they were voting and they did not have time to review the motion to ensure everything was in order and also, at the time, she believed that none of the members believed they were deciding on the subdivision, even though a vote was taken, they voted against the 'motion' not the 'subdivision.' She stated [that] there were also other reasons for not voting for the motion as well. She stated that, at that time, she had said she would prepare another motion for this meeting and that none of the members had objected. Very lengthy discussion ensued among the [defendant's] members regarding the proper procedure [the defendant] should follow at this point regarding the previous meeting results and what the current status of [the plaintiff's application] was. An attempt by [chairwoman] Harris to present another motion to approve [the plaintiff's application] was strongly opposed and therefore did not move forward. Motion [made] by [commissioner] Morey to suspend, indefinitely, any further action or discussion regarding [the plaintiff's application]. The motion was seconded by

[commissioner Marian] Schomp. [Chairwoman] Harris questioned [commissioner] Morey's use of the word 'indefinitely.' The members discussed the ramifications of using the word 'indefinitely.' [Chairwoman Harris] also strongly questioned why the members were taking the advice of one member over the advice she had received from the [defendant's] attorney, Tom Byrne." The motion failed on a tie vote of two commissioners in favor and two opposed, with one commissioner abstaining.[3] As a result, no action was taken on the matter that evening. The defendant thereafter took no further action on the plaintiff's application.

General Statutes § 8-26d required the defendant to act on the plaintiff's subdivision application within sixty-five days after the completion of the public hearing, which concluded on May 18, 2006. Consequently, the plaintiff on August 9, 2006, demanded in writing that the defendant issue a certificate of approval pursuant to General Statutes § 8-26. When the defendant did not comply, the plaintiff appealed to the Superior Court seeking a writ of mandamus. On March 15, 2007, the court granted the defendant's motion for summary judgment while denying the plaintiff's motion for summary judgment. In its two page memorandum of decision, the court reasoned: "A thorough review of all of the materials submitted by the parties leads the court to the conclusion that the substance and nature of the defendant's vote of July 6, 2006, relative to the plaintiff's application constitutes action by the defendant as a matter of law under General Statutes § 8-26 and was within the time period mandated by the statutory framework for such decisions." From that judgment, the plaintiff appeals.

---

[3] A legal notice published on July 28, 2006, stated that the defendant, at its special meeting of July 20, 2006, "denied Walker Brook Farms, Chestnut Land Road—78 lots."

Before considering the plaintiff's claims, we first note the applicable standard of review. Practice Book § 17-49 provides that "summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) *Miles* v. *Foley*, 253 Conn. 381, 385–86, 752 A.2d 503 (2000). Our review of the trial court's decision to grant a motion for summary judgment is plenary. *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 559, 864 A.2d 1 (2005).

I

Our analysis begins with the mandates of General Statutes § 8-26, which govern the approval of subdivision plans. It provides in relevant part: "The commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith, including existing subdivisions or resubdivisions made in violation of this section, within the period of time permitted under section 8-26d. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to any person applying to the commission under this section, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form,

within fifteen days after such decision has been rendered. In any case in which such notice is not published within such fifteen-day period, the person who made such application may provide for the publication of such notice within ten days thereafter. Such notice shall be a simple statement that such application was approved, modified and approved or disapproved, together with the date of such action. The failure of the commission to act thereon shall be considered as an approval, and a certificate to that effect shall be issued by the commission on demand. . . ." General Statutes § 8-26.

Our Supreme Court has explained that "[t]he purpose of § 8-26 is to ensure expeditious action on the part of municipal planning commissions. It is the failure of the commission to act upon an application within the time provided that results in approval by operation of law under § 8-26. . . . [T]he obvious intention of the legislature in using this language was to ensure prompt and expeditious action on subdivision applications for the protection of the subdivider. . . . [T]his statutory purpose will best be facilitated if subdivision applicants know with certainty that a definite course of statutory action has been taken by a commission, setting in motion clear avenues of appeal." (Citation omitted; internal quotation marks omitted.) *Miles* v. *Foley*, supra, 253 Conn. 389; see also *Koskoff* v. *Planning & Zoning Commission*, 27 Conn. App. 443, 457, 607 A.2d 1146 (1992) (*Heiman, J.*, dissenting) ("[a]lthough there is no reported legislative history regarding the automatic approval provision of General Statutes § 8-26, the purpose of the provision is obvious: to deter . . . commissions from unduly delaying their consideration and resolution of applications for subdivision approval"), cert. granted on other grounds, 222 Conn. 912, 608 A.2d 695 (1992) (appeal dismissed November 10, 1992).

Section 8-26 plainly required the defendant either to approve, disapprove or modify and approve the plaintiff's subdivision application. It is undisputed that the

Morey motion of July 6, 2006, was neither a motion to approve nor a motion to disapprove the application. The plaintiff maintains that, despite its nomenclature, the Morey motion was not a motion for modification and approval and, thus, did not constitute action pursuant to § 8-26.

The 1100 word Morey motion contained twenty-three conditions.[4] Critical to our inquiry is the first condition,

[4] The Morey motion provided: "I (Tom Morey) move that the [defendant] modify and approve the [s]ubdivision consisting of approximately 210.798 acres known as 'Walker Brook Farm,' located on Route 109 and North Walker Brook Road. The owner of record is [the plaintiff], Newtown, Connecticut. The [s]ubdivision [m]ap is entitled, 'Walker Brook Farm' dated September 1, 2005, subject to the following revisions and conditions which shall be set forth on the [s]ubdivision Mylar.

"1. All [s]ubdivision lots shall consist of a minimum of 60,000 square feet of buildable area and all lot lines shall be reconfigured such that the minimum lot width of each lot shall not be less than 180 linear feet for purposes of meeting the [p]ublic [h]ealth [c]ode requirement of minimum leaching spread systems (MLSS). Rear lot accessways may remain at [twenty] linear feet of frontage on the proposed roadways. The [a]pplicant shall provide to the [defendant] for its review prior to the approval and signing of the subdivision Mylar, a revised A-2 record map delineating amended lot areas and lot lines.

"2. All proposed building lots shall be served by individual wells and septic systems that shall comply with all applicable codes, rules and regulations of the [s]tate of Connecticut and the [t]own of New Milford and shall further comply with any and all requirements of the New Milford [d]irector of [h]ealth.

"3. The applicant shall comply with any and all requirements of the [i]nland [w]etlands [c]ommission.

"4. The [s]ubdivision Mylar shall not be signed unless and until a bond in the amount of $2,000,000.00 is posted. The bond shall be in the form of a [c]ertificate of [d]eposit, assigned to the [t]own of New Milford, and shall be for the purposes of assuring that the approved [s]ubdivision improvements have been built in compliance with the [r]oad [o]rdinance and have been completed to the satisfaction of the [t]own [e]ngineer or his designee. No work in furtherance of the subdivision shall commence until the bond has been posted with the [defendant].

"5. Any application for the release or reduction of the bond for the [s]ubdivision improvements will not be considered by the [defendant] unless it is accompanied by a statement from the [t]own [e]ngineer or his designee, in a form acceptable to the [defendant], setting forth that the improvements are in full compliance with the [t]own's [r]oad [o]rdinance and any other applicable [t]own ordinances, rules or regulations.

"6. No subdivision improvements shall be accepted into the New Milford road system unless and until the [t]own engineer or his designee has certified

to the [defendant] that the improvements comply with the [r]oad [o]rdinance; any such certification shall be accompanied by a 'road as-built' submitted by the applicant and prepared by a surveyor or engineer licensed by the [s]tate of Connecticut.

"7. No subdivision improvements shall be accepted into the New Milford road system unless and until maintenance bond has been posted in a form and amount that is acceptable to the [defendant].

"8. The [s]ubdivision Mylar shall not be signed unless and until all proposed common driveways are named and numbered in compliance with section 2.2.1b of the [p]lanning [r]egulations.

"9. All proposed common driveways shall be constructed in compliance with [s]ection 2.2.1b of the [p]lanning [r]egulations and the New Milford [d]riveway [o]rdinance. The applicant shall submit to the [defendant] and the [t]own [e]ngineer or his designee a 'common driveway as-built' prepared by a surveyor or engineer licensed by the [s]tate of Connecticut. No certificate of occupancy shall be issued for any dwellings served by the proposed common driveways unless and until the [t]own [e]ngineer or his designee has certified that the [c]ommon [d]riveway has been completed and is in compliance with said [s]ection and [o]rdinance.

"10. The applicant shall submit a [c]ommon [d]riveway [m]aintenance [a]greement for all lots served by common driveways that is binding on all future lot owners and shall be in a form that is acceptable to the [defendant]; said [a]greement shall be recorded in the [t]own [c]lerk's [o]ffice.

"11. Any and all drainage easements, if any, shall be conveyed to the [t]own of New Milford within [ninety] days of the filing of the subdivision Mylar.

"12. No certificate of occupancy shall be issued for any dwellings constructed on any lot unless and until all proposed roadways serving said dwellings have been completed with binder course and curbs and approved by the [t]own [e]ngineer or his designee.

"13. In accordance with [s]ection 107-050 of the [z]oning [r]egulations, prior to the signing of the subdivision Mylar, title to and maintenance of the [c]onservation area consisting of 118.888 acres shall be vested in a legally formed [h]omeowners [a]ssociation in a form that is acceptable to the [defendant].

"14. On July 1, 2007 and every anniversary date thereafter, the [h]omeowners [a]ssociation shall submit a report on the conditions of all [c]onservation areas to the New Milford [p]lanning, [z]oning, [c]onservation [c]ommissions and the New Milford [h]ealth [d]epartment.

"15. No [c]ertificate of occupancy shall be issued for any dwelling unless and until all 911 numbers have been installed in accordance with the applicable [o]rdinances of [the] [t]own of New Milford.

"16. A soil erosion bond in the amount of $3,500 per lot shall be paid to the [defendant] prior to the issuance of any building permits. The bond shall be in a form acceptable to and made payable to the [defendant].

"17. All soil erosion devices shall be installed prior to any roadway and lot excavations.

"18. A report in writing, signed by the developer, shall be provided to the [defendant] every fourteen days, giving the status and condition of the soil erosion control from the first day of soil disturbance.

which provides: "All [s]ubdivision lots shall consist of a minimum of 60,000 square feet of buildable area and all lot lines shall be reconfigured such that the minimum lot width of each lot shall not be less than 180 linear feet for purposes of meeting the [p]ublic [h]ealth [c]ode requirement of minimum leaching spread systems (MLSS). Rear lot accessways may remain at [twenty] linear feet of frontage on the proposed roadways. *The [a]pplicant shall provide to the [defendant] for its review prior to the approval and signing of the subdivision Mylar, a revised A-2 record map delineating amended lot areas and lot lines.*"[5] (Emphasis added.) Thus, the Morey motion expressly reserved final approval of the plaintiff's application, providing for subsequent review by the defendant following the submission of a revised map reflecting compliance with the requirements contained in condition one.

On several occasions, our Supreme Court has considered the question of whether conditional approval of

---

"19. The project shall comply with the 2004 [s]tate of Connecticut sedimentation and soil erosion control guidelines.

"20. Homestead Drive between stations 36 + 00 and 44 + 50 shall be constructed so that they conform to the New Milford [r]oad [o]rdinance.

"21. The applicant shall comply with any and all requirements of the [s]tate [t]raffic [c]ommission and shall provide to the [t]own [e]ngineer or his designee a copy of the [state traffic commission] [p]ermit after it has been granted by the [s]tate.

"22. The proposed breakaway gate at the intersection of Homestead Drive and North Walker Brook Road shall be eliminated.

"23. The 'Walker Brook Farm' [s]ubdivision approval shall expire on July 6, 2011 unless and until any and all bonded infrastructure improvements have been completed to the satisfaction of the [defendant]. Upon the applicant's request, an extension or extensions may be granted by the [defendant] up to an additional [five] years but the total including the initial [five] year period and all extensions shall not exceed [ten] years. All such requests for extensions shall be submitted to the planning commission no less than [six] months prior to any expiration date."

[5] In light of our resolution of the plaintiff's principal claim, we do not address its ancillary claim that the defendant lacked statutory authority to impose a larger minimum lot size requirement than that established by the New Milford zoning regulations under *Cristofaro* v. *Burlington*, 217 Conn. 103, 107, 584 A.2d 1168 (1991).

a subdivision application constitutes modification and approval under § 8-26. In the seminal case of *Carpenter* v. *Planning & Zoning Commission*, 176 Conn. 581, 592, 409 A.2d 1029 (1979), the court stated: "Reviewing the court files and the minutes, the Court of Common Pleas concluded that a 'conditional approval' is not one of the possible courses of action, i.e., 'approval, modification and approval, or disapproval,' enumerated in General Statutes § 8-26, and thus, such conditional approval constituted a 'failure to act' within that statute. The trial court was correct in this interpretation of § 8-26. Nothing in the subdivision approval statute, § 8-26, allows for the imposition of conditions upon the planning and zoning commission's approval of a subdivision plan; the statute merely provides for the commission to 'approve, modify and approve, or disapprove' a subdivision application." Accordingly, the court held that "where a commission makes the approval of a plan of subdivision subject to a condition, the fulfillment of which is within the control of neither the commission nor the applicant, such as approval by a coordinate municipal agency, the commission has 'failed to act' within the intendment of General Statutes §§ 8-26 and 8-28, unless the coordinate agency approval appears to be a reasonable probability."[6] Id., 592–93. Likewise, in *River Bend Associates, Inc.* v. *Planning Commission*, 271 Conn. 41, 58, 856 A.2d 959 (2004), the court held that the defendant planning commission "had no authority to grant the plaintiffs' subdivision application on the condition that [they] obtain approval of [their] sewer application" before the water pollution control

[6] The *Carpenter* holding recognizes the reality that applicants before a planning or zoning commission regularly must seek approval from coordinate agencies, hence its requirement that the approval of such a coordinate agency "be a reasonable probability." *Carpenter* v. *Planning & Zoning Commission*, supra, 176 Conn. 593. In contrast to the present case, *Carpenter* did not involve commission approval subject to future final approval by that same commission.

authority.[7] Examples of permissible conditional approval under § 8-26 include *Nicoli* v. *Planning & Zoning Commission*, 171 Conn. 89, 368 A.2d 24 (1976), and *Crescent Development Corp.* v. *Planning Commission*, 148 Conn. 145, 168 A.2d 547 (1961), both of which required, as a condition of approval, the subdivision applicant to construct a road.[8]

Condition one of the Morey motion does not contain conditional approval. It contains preliminary approval subject to compliance with certain requirements by the plaintiff followed by future review and final approval by the defendant. As distinguished from *Nicoli* and *Crescent Development Corp.*, it is not approval subject to the construction of a road; it is preliminary approval subject to the construction of a road, followed by submission to the defendant of documentation regarding compliance therewith and further review and approval by the defendant thereon. The defendant has provided no authority to support the proposition that such action on the part of a planning commission constitutes modification and approval under § 8-26.

The parties devote substantial discussion to the fact that the ultimate vote on the Morey motion failed on a

[7] We note that the court in *River Bend Associates, Inc.*, in considering the defendant planning commission's action, stated that "[t]he scope of the planning commission's authority to grant a conditional approval of a subdivision application under [General Statutes] §§ 8-26 and 8-30g is a question of statutory interpretation over which our review is plenary." *River Bend Associates, Inc.* v. *Planning Commission*, supra, 271 Conn. 55.

[8] Similarly, the court in *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 380, 389, 610 A.2d 620 (1992), concluded that the defendant planning and zoning commission "took valid action on [a] subdivision application when it modified the lot configuration of the corporation's subdivision application by reducing the number of lots thereon [from twenty-two] to sixteen and approved it, as modified" because the applicable subdivision regulations "expressly granted authority to the commission" to make such a modification. Unlike the Morey motion, the defendant in *Timber Trails Corp.* did not require the applicant to submit a revised plan for the defendant's review and final approval following its initial approval of the application.

tie vote of two commissioners in favor and two opposed, with one commissioner abstaining. The defendant correctly observes that our decisional law has held that "the failure of an application to garner enough votes for its approval amounts to a rejection of the application. . . . Here the motion to grant the application did not receive the majority vote necessary for approval, and the minutes, in accordance with our cases, correctly stated that it had been 'disapproved.' "[9] (Citations omitted.) *Merlo* v. *Planning & Zoning Commission*, 196 Conn. 676, 683, 495 A.2d 268 (1985); see also *Huck* v. *Inland Wetlands & Watercourses Agency*, 203 Conn. 525, 533–34, 525 A.2d 940 (1987); *Smith-Groh, Inc.* v. *Planning & Zoning Commission*, 78 Conn. App. 216, 224, 826 A.2d 249 (2003). For purposes of our analysis, the vote is immaterial to the issue before us. The threshold question, which is dispositive in the present case, is whether the motion itself constituted a motion either to approve, disapprove or modify and approve under § 8-26. We conclude that it did not.

The Morey motion most resembles the action of the defendant planning and zoning commission in *Finn* v. *Planning & Zoning Commission*, 156 Conn. 540, 244 A.2d 391 (1968). In *Finn*, the court noted that "[t]here is no provision in either § 8-25 or § 8-26 of the General Statutes which gives specific authority to the commission to provide for the submission of a preliminary plan and for preliminary approval as a condition precedent to final approval." Id., 545. The court continued: "Section 8-26 also provides: 'All plans for subdivisions shall be submitted to the commission with an application in the form to be prescribed by it.' We recognize that,

---

[9] Although we note the plaintiff's disagreement with the aforementioned precedent, it is axiomatic that this court, as an intermediate body, is bound by the decisions of our Supreme Court. See *Fennelly* v. *Norton*, 103 Conn. App. 125, 133 n.5, 931 A.2d 269, cert. denied, 284 Conn. 918, 931 A.2d 936 (2007).

since the commission is empowered to 'modify and approve' any application or maps and plans submitted therewith, it may be necessary within the sixty-day period for the applicant to submit more than one map or plan. The statute relates to the application rather than to the maps or plans which are incidental thereto. It provides for only one application and requires that it must be acted upon within sixty days. Failure of the commission to act within such time shall be considered as an approval. The regulations in question in the instant case provide in effect for two separate and distinct applications although the second, and so-called official submission, avoids the use of the word 'application' and refers instead to a 'plan.' In our opinion this is in reality a second application, for which there is no statutory authorization. . . . In the instant case, there is no such grant of authority to planning commissions." (Citation omitted.) Id., 546. Accordingly, the court declared the regulation in question invalid. Id.; see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 22:6, p. 663 ("[i]t is the nature of the underlying action taken by the planning commission that will determine its legality, not whether it is phrased in terms of a 'modification' or 'conditional approval' ").

In the present case, the Morey motion to "modify and approve" the plaintiff's application expressly required the wholesale reconfiguration of all subdivision lots and the submission of a second "revised A-2 record map" to the defendant "for its review *prior to the approval* . . . ." (Emphasis added.) To paraphrase *Finn*, although the Morey motion avoids the use of the word application and refers instead to a revised map, it is, in reality, a second application for which there is no statutory authorization. We therefore conclude that the Morey motion does not constitute modification and approval under § 8-26.

Our conclusion is bolstered by the fact that, in analyzing action under § 8-26, the Supreme Court has considered how the land use agency itself interpreted its action in voting on an application before it. *Merlo* v. *Planning & Zoning Commission*, supra, 196 Conn. 676, involved a motion to approve a subdivision plan that included certain stipulations not included in the application as submitted by the plaintiff. Although the motion was disapproved by a vote of five to four, the court acknowledged that "[f]rom a parliamentary viewpoint, the defeat of this motion is not the equivalent of a disapproval of the application as submitted by the plaintiff. See Robert's Rules of Order (1979 Rev.) § 33, pp. 144–45." *Merlo* v. *Planning & Zoning Commission*, supra, 683. Nevertheless, the court observed that "[i]n any practical sense . . . the majority vote against the application as modified by the stipulations contained in the motion, which appear to have been added in order to overcome objections raised by some commission members, indicates that the original subdivision plan would also have failed to receive sufficient votes for approval. If any commission member favored approval of the subdivision without any stipulations and believed that a majority might be similarly inclined, we may presume that such a motion would have been made." Id. The court thus held that "since the commission itself regarded its vote of June 22, 1978, as a disapproval of the application and the published notice so informed the plaintiff, the application was effectively disapproved on that date, well within the time allowed." Id., 684; see also *Huck* v. *Inland Wetlands & Watercourses Agency*, supra, 203 Conn. 535 ("because the agency itself regarded its vote of February 25, 1980, as a denial of the application for the requested permit and the newspaper notice so informed the plaintiff and the public, the application was effectively denied on that date which was well within the time for it to act").

That consideration undermines the defendant's contention that the July 6, 2006 vote constituted a denial of the plaintiff's subdivision application. First, the record reflects uncertainty among the members of the defendant as to precisely what the Morey motion constituted and on what they had voted. The official minutes of the July 6, 2006 meeting state that following the failure of Morey's motion, the defendant's chairwoman "stated [that] she would rework the motion for the [defendant's] next . . . [m]eeting" without objection. Had the defendant or any of its members understood the failure of that motion to constitute disapproval of the plaintiff's subdivision application, it is improbable that they would acquiesce to further consideration of the application at their next meeting. Second, unlike *Merlo* and *Huck*, the defendant never published notice of its July 6, 2006 decision on the Morey motion, as required by § 8-26. Third, at its very next meeting of July 20, 2006, the defendant again discussed the plaintiff's application. The official minutes of that meeting contain explicit disagreement among members as to the effect of the failed Morey motion. The chairwoman of the defendant stated, inter alia, that (1) at the time of the vote "she believed that none of the members believed they were deciding on the subdivision [and] even though a vote was taken, they voted against the 'motion' not the 'subdivision' "; (2) following the vote on the Morey motion, "she had said she would prepare another motion for this meeting and that none of the members had objected"; and (3) she had received advice on the matter from the defendant's attorney. The minutes also indicate that the chairwoman attempted to present another motion to approve the plaintiff's application that did not move forward due to strong opposition and that "[v]ery lengthy discussion ensued among the [defendant] members regarding the proper procedure [the defendant] should follow at this point regarding the

previous meeting results and what the current status of [the plaintiff's application] was." After a motion to "suspend, indefinitely, any further action or discussion" regarding the plaintiff's application made by commissioner Morey also failed on a tie vote,[10] no further action was taken on the matter that evening. It thus is evident that, unlike in *Merlo* and *Huck*, the defendant collectively did not regard its vote of July 6, 2006, as a disapproval of the plaintiff's subdivision application.

In addition, the underlying purpose of § 8-26 was not met. As we previously noted, "[t]he purpose of § 8-26 is to ensure expeditious action on the part of municipal planning commissions. It is the failure of the commission to act upon an application within the time provided that results in approval by operation of law under § 8-26. . . . [T]he obvious intention of the legislature in using this language was to ensure prompt and expeditious action on subdivision applications for the protection of the subdivider. . . . [T]his statutory purpose will best be facilitated if subdivision applicants know with certainty that a definite course of statutory action has been taken by a commission, setting in motion clear avenues of appeal." (Citation omitted; internal quotation marks omitted.) *Miles* v. *Foley*, supra, 253 Conn. 389. If the members of the defendant themselves were unsure of the effect of their vote on the Morey motion on July 6, 2006, it seems implausible to suggest that the plaintiff knew with certainty that a definite course of statutory action had been taken by the defendant on its application, particularly when the defendant

---

[10] The defendant has not alleged before the trial court or this court that the July 20, 2006 motion to "suspend, indefinitely, any further action or discussion" constituted either approval, disapproval or modification and approval under § 8-26. In its memorandum of law in support of its motion for summary judgment, the defendant stated that "[i]t is the [defendant's] position that the [July 20, 2006] motion had no effect in that the matter was completed on July 6, 2006."

never provided any public notice of the July 6, 2006 determination.

Following the July 20, 2006 meeting, at which it is undisputed that the defendant did not act on the plaintiff's application pursuant to § 8-26, the defendant took no further action on the plaintiff's application. In light of our conclusion that the Morey motion was an invalid action under § 8-26, we further conclude that the defendant failed to act on the plaintiff's application within sixty-five days of the completion of the public hearing, as required by §§ 8-26 and 8-26d. "For more than a century, our Supreme Court has recognized that when action by a municipal entity is subsequently found to be invalid, it is as if that entity never met or voted." *Koskoff* v. *Planning & Zoning Commission*, supra, 27 Conn. App. 449; see also *Carpenter* v. *Planning & Zoning Commission*, supra, 176 Conn. 592 (conditional approval constituted failure to act). Under § 8-26, the defendant's failure to act in a timely manner on the plaintiff's application mandates automatic approval thereof. General Statutes § 8-26; see also *Merlo* v. *Planning & Zoning Commission*, supra, 196 Conn. 682; *Koskoff* v. *Planning & Zoning Commission*, supra, 450. Accordingly, the plaintiff was entitled to a certificate to that effect issued by the defendant on demand.

II

Alternatively, the defendant claims that mandamus is not a proper remedy in the present case. It insists that the administrative appeal process "furnishes the plaintiff a more than adequate vehicle and forum for judicial review of the [defendant's] work and actions." We disagree.

Our Supreme Court rejected a similar claim in *Merlo* v. *Planning & Zoning Commission*, supra, 196 Conn. 676. It stated: "[T]his court in several cases has implicitly approved mandamus as an appropriate remedy

where it is claimed that a subdivision plan has been automatically approved pursuant to § 8-26 because of the failure of a planning commission to perform its statutory duty within the prescribed time. . . . [W]e [have] held that the pendency of a zoning appeal, which could do no more than secure approval of the coastal site plan, which already had been approved by operation of law, did not preclude resort to the more expeditious and effective remedy of mandamus in order to vindicate the plaintiffs' right to the immediate issuance of a building permit. The situation is similar in this case, where the plaintiff claims that her subdivision plan has been approved pursuant to § 8-26 by virtue of the inaction of the commission. If the plan has been approved by operation of law, as she contends, her right to certification of its approval by the commission can most directly, completely and expeditiously be effectuated by mandamus." (Citations omitted; internal quotation marks omitted.) Id., 680–81; see also *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 413, 898 A.2d 157 (2006). Because the plaintiff's subdivision application was automatically approved by operation of law under § 8-26, mandamus is a proper remedy in the present case.

We conclude that the court improperly rendered summary judgment in favor of the defendant. In light of the foregoing, summary judgment should have been rendered in favor of the plaintiff.

The judgment is reversed and the case is remanded with direction to render judgment granting a writ of mandamus to compel the defendant to approve the plaintiff's subdivision application.

In this opinion the other judges concurred.