******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TOWN OF SOUTH WINDSOR ET AL. *v.*
# KRISTIN LANATA ET AL.
## (AC 42973)

Alvord, Prescott and DiPentima, Js.

*Syllabus*

The plaintiffs, the town of South Windsor and its zoning enforcement officer, sought injunctive relief and fines against the defendant, who operated a salvage business out of her residential property in the town. The plaintiffs alleged that the defendant violated the town's blight ordinance and zoning regulations in storing materials on her property that created a junkyard. Prior to the commencement of the action, the enforcement officer had issued several notices to the defendant, beginning in 2014, which alleged that the defendant that was in violation of the town's regulations. In December, 2016, a fire occurred at the property and, thereafter, an arson investigation commenced, which ultimately disproved a claim of arson. On February 24, 2017, the defendant was notified again that she was in violation of the blight ordinance, was directed to remove the debris, and was informed that she had the right to appeal. The defendant also received, concurrently, a cease and desist order identifying a zoning violation and she was directed to cease the deposition of discarded material on the property. The notice further stated that she had the right to appeal and that should she fail to address the issues, the defendant would be subject to further statutory (§ 8-12) proceedings and penalties. The defendant did not appeal from either notice. The plaintiffs commenced an action in effort to compel the defendant to comply with the notices. The trial court determined that the defendant was operating a salvage business on her property in violation of the town's zoning regulations and the blight ordinance. The court also found that the defendant had wilfully violated the town's zoning regulations since at least February 24, 2017, the date of the cease and desist order, and imposed a fine pursuant to § 8-12 of $175 per day, running from February 24, 2017, to the date of the court's decision, for a total sum of $125,000, and the defendant appealed to this court. *Held*:

1. The defendant's unpreserved claim that the February 24, 2017 cease and desist order premised on her alleged zoning violation was unconstitutionally vague could not be reviewed pursuant to the bypass doctrine because, even if the defendant had presented her claim to the trial court, that court would have lacked jurisdiction over it on the basis that she failed to exhaust her administrative remedies; the defendant did not appeal the February 24, 2017 cease and desist order to the zoning board of appeals, she did not argue that she was prevented from doing so, and she did not raise before the trial court any constitutional defect in the regulations whose enforcement was at issue; rather, the defendant's challenge was to the actions of the enforcement officer in issuing the cease and desist order, which challenge would be beyond the narrow purview of the constitutional exception to the exhaustion requirement.

2. The trial court abused its discretion in imposing fines beginning on February 24, 2017, the date of the cease and desist order for a zoning violation, for the time period during which the defendant was under orders not to disturb the property: the record contains undisputed evidence, and the plaintiffs' counsel acknowledged, that the defendant was prohibited for some time following February 24, 2017, by her insurer and the police from removing items from the property, as the property was under an arson investigation at the time the February 24, 2017 order was issued; furthermore, the daily fine of $175, imposed on the basis of the trial court's determination that the defendant wilfully had violated the town's zoning regulations, was improper, as the record was devoid of any suggestion, and the plaintiffs did not contend, that the defendant had been convicted of any offense in a criminal proceeding, as a criminal prosecution was a predicate for the imposition of fines for a wilful violation pursuant to § 8-12, and the court was not authorized under § 8-12 to impose the same penalties in a civil proceeding that it could impose in a criminal proceeding.

Argued November 10, 2020—officially released March 9, 2021

*Procedural History*

Action seeking, inter alia, an injunction ordering the defendants to take certain corrective actions to bring their real property into compliance with town ordinances and zoning regulations, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the defendant Michael Lanata was defaulted for failure to plead; thereafter, the matter was tried to the court, *Moukawsher, J.*; judgment for the plaintiffs, from which the named defendant appealed to this court. *Reversed in part*; *new trial*.

*Edward C. Taiman*, for the appellant (named defendant).

*Richard D. Carella*, with whom was *Adam B. Marks*, for the appellees (plaintiffs).

*Opinion*

ALVORD, J. The defendant Kristin Lanata[1] appeals from the judgment of the trial court rendered in favor of the plaintiffs, the town of South Windsor (town) and its zoning enforcement officer, Pamela Oliva.[2] On appeal, the defendant claims (1) that a February 24, 2017 cease and desist order was unconstitutionally vague as to the conduct to which it applied, (2) that the court erred in failing to conclude that she was justified in not complying with the February 24, 2017 cease and desist order on the basis that she had been instructed by both the police and her insurer not to touch or remove any of the personal property located in the backyard of her property, and (3) that the court misapplied General Statutes § 8-12 in assessing a fine for wilful violation of the town's zoning regulations.[3] We conclude that the court abused its discretion in imposing a fine for a zoning violation that covered a time period during which she was under orders not to disturb the property.[4] Accordingly, we reverse the decision of the trial court as to count two of the plaintiffs' complaint, which alleges the zoning violation, and remand for a new trial on that count.[5]

The following facts and procedural history are relevant to our resolution of the defendant's claims. The defendant, who operates a business in which she is hired by lenders to clean personal property out of homes on which they have foreclosed, is the owner of property located at 460 Miller Road in South Windsor (property). For years, the defendant used the property to sort, store, and dispose of salvage she obtained in her business. By letter dated May 2, 2014, Oliva notified the defendant that she had investigated a recent complaint regarding the maintenance of the property. Specifically, she drove by the property and "observed a large amount of debris in the front and side yard, within the public view." The letter stated that this condition met the definition of blight under the blight ordinance.[6] The letter directed the defendant to remove the accumulated debris by May 19, 2014, "to avoid [an] enforcement action and potential daily penalties of [$100]" by Oliva's office. The letter stated that "[y]ou have the right to appeal this action to a Hearing Officer within ten (10) days after service of this notice on you, in accordance with the Anti-Blight Ordinance of the [town]." The defendant did not appeal.[7] In October, 2014, the defendant installed a fence that mostly, but not entirely, hid the piles of salvage and equipment located on the right side of the property. Around the side of the fence, however, the items could still be viewed.

Also in October, 2014, Oliva mailed to the defendant a cease and desist order that identified a zoning violation on the property. Specifically, the order identified the zoning violation as "[s]torage of discarded or second-hand material, creating a junkyard in violation of

Table 3.1.1A Permitted Uses in Residential Zones."[8] The order stated that the corrective action required was to "[r]emove all of the material stored at [the property]." The defendant testified that she did not receive this letter, and Oliva testified that the town did not receive a return receipt. The defendant did receive, however, a November 7, 2014 letter informing her that the town planning department "has placed a Caveat in the land records stating that a zoning violation exists on this property . . . ." The letter also notified the defendant that "[t]he site history has been forwarded to the Town Attorney for possible legal action." In April, 2016, after giving the defendant one day's notice, town officials entered the property and removed items from the defendant's lawn. The entry is the subject of a civil rights lawsuit filed in federal District Court. The Superior Court in the present case discussed the town's removal of the items, noting that it had a bearing on its decision "only as a consideration concerning appropriate equitable relief, in terms of whether to run any violation period back to the original 2014 violation notice or some later date, and in setting the amount of any fine that might be imposed."

A fire occurred at the property on December 6, 2016. At the time of the fire, the house was not safe for the firefighters to enter, as the house had been included on a "hoarder list," utilized to warn firefighters of the dangers of entering. As a consequence of the fire, the house was reduced to a burned out shell, and the back lawn of the property was strewn with salvage from the inside of the house. The fire marshal for the town made an accusation that the fire was the result of arson, which claim, following an investigation, was ultimately disproven.

By notice of violation dated February 24, 2017, Oliva informed the defendant that the property was in violation of the town's blight ordinance, specifically the sections defining a blighted structure, dangerous structure, and nuisance.[9] The notice directed the defendant to "[r]emove the debris and unregistered vehicles from the property and correct all damage to the building, including but not limited to the roof, exterior walls, windows and supporting structures . . . ." The notice stated: "You have the right to request a hearing before the Blighted Property Appeals Board within (15) days after receipt of this notice, in accordance with Section 7 (a) of the Town Ordinance. Failure to address these issues can result in daily penalties of one hundred dollars ($100.00)." The defendant did not appeal the notice, but testified that she had asked town officials how to appeal, and they did not respond. Oliva also issued, and the defendant received, a February 24, 2017 cease and desist order identifying a zoning violation at the property. The order identified the violation as "[s]torage of discarded or second-hand material, creating a junkyard in violation of Table 3.1.1A Permitted Uses in Residen-

tial Zones." The order directed the defendant to "[i]mmediately cease the deposition of discarded and/or second-hand material on the property." The order stated that "[y]ou have the right to appeal this action to the South Windsor Zoning Board of Appeals within 30 days after service of this order on you, in accordance with . . . [§] 8-12." It additionally stated: "If you fail to comply, you may be subject to further enforcement proceedings and penalties in accordance with [§] 8-12." The defendant did not appeal. See part I of this opinion.

The plaintiffs instituted this action on October 30, 2017. The plaintiffs filed an amended two count complaint dated January 25, 2019 (operative complaint). The first count alleges that the defendant violated the blight ordinance, codified in Chapter 50, article IV, § 50-93, of the South Windsor Code of Ordinances (blight ordinance). Specifically, the plaintiffs allege that the defendant "ha[d] not complied with the town's notices" and had "continue[d] to accumulate more debris and materials" at the property. In the second count, the plaintiffs allege that the defendant violated § 3.1.1A of the South Windsor Zoning Regulations (regulations), by storing "discarded or second-hand material creating a junkyard." In their request for relief, the plaintiffs sought "[a]n injunction ordering the [defendant] to perform immediately the corrective action pursuant to the notices of violation and cease and desist order to bring the property in compliance with the blight ordinance and zoning regulations." The plaintiffs additionally sought, inter alia, "[a] fine of $100 per day" as provided for in the blight ordinance,[10] "[a] fine of $100 per day as provided for in . . . § 8-12," relative to violations of zoning regulations, and attorney's fees and costs. The defendant filed an answer and special defenses on January 31, 2019. The plaintiffs filed their reply on February 1, 2019.

The trial on this matter was held from February 6 through 8, 2019. The plaintiffs' witnesses included: Oliva; Heather Oatis, the registered sanitarian for the town; James Donnelly, a site manager with All American Waste, which performs bulky waste pickup for the town; and four town residents who live near the property. The defendant also testified and called no further witnesses, and the court heard closing arguments on February 8, 2019.

On February 14, 2019, the court issued its memorandum of decision. It first found that "for around five years [the defendant] has been using her residentially zoned home in South Windsor to run a junk or salvage business." It stated that, although the defendant takes some personal property that she cleans out of foreclosed homes to storage facilities, she also takes material to her property and sorts it on her lawn. She then "sells some, discards some, and keeps some." The court found that, "[o]ver the years, the front and right side

of her house have been regularly strewn with things and parts of things that appear to come and go." The court stated that although the defendant no longer lives at the property, she continues to be there most days and that she stores equipment and sorts salvage there.

The court found that the defendant had been using her property for years to operate her business in violation of Table 3.1.1A of the regulations, which identifies the permitted uses of a residential property. The court stated that whether one considered her use of the property as running a junkyard or a salvage operation, neither use is permitted in a residential zone.

As to the blight allegations, the court found that the defendant's property was in violation of the blight ordinance, in that "[h]er house has been a ruin since 2016, and the lawn has been strewn with not just her commercial salvage but with piles of her personal property." The court found that, although the blight ordinance authorizes $100 fines for each separate offense, the ordinance does not set up a procedure "that makes clear how to impose the $100 fine nor do they say that 'per offense' means that every day a problem continues is a new offense." The court concluded that "without a mechanism making clear how the blight fine is imposed and with no provision for adequate notice of it being imposed, allowing it to be imposed here under these circumstances can't be squared with a prudent exercise of the court's discretion and the basic notion that [the defendant] is owed some due process before the government fines her." Accordingly, the court declined to impose any fines under the blight ordinance.

The court did impose fines for the defendant's violation of the zoning regulations. It declined to impose fines dating back to the October 10, 2014 notice, given the evidence suggesting that the defendant had not received that notice. The court found that the defendant wilfully had violated the town's zoning regulations since at least February 24, 2017, the date of the cease and desist order. The court credited testimony of neighbors that the defendant continued to deposit and sort material at the property even up to the date of trial, and it found not credible the testimony of the defendant that she had not brought any new material to the property since the 2016 fire.

Pursuant to § 8-12, the court "cho[se] a per diem fine of $175 per day,[11] running from February 24, 2017, to [the] date [of its memorandum of decision] and round[ed] the total to an even $125,000."[12] (Footnote added.) In setting the amount of the daily fine, the court considered the following: the defendant's "lack of candor and the length of time since 2017 in which she has violated the peace of this residential neighborhood," the loss of the defendant's home and her claims of financial hardship, the defendant's claim "that she has been financially handicapped by the town's claim

against her insurance proceeds and what proved to be baseless accusations by the fire marshal of arson on her property." The court found that the hardship faced by the defendant in cleaning up the property did not justify her continuing to operate part of her business on the property.

The court also enjoined the defendant from "parking overnight or storing for any period of time, commercial vehicles, machinery, tools or other equipment she uses for business purposes . . . unloading, sorting, storing, or disposing of any salvage or other personal property except that she may store there personal property that is currently being used for the sole purpose of maintaining that property . . . [and] maintaining on the lawns of the property any personal property not currently being used for its intended purpose." The court indicated that it would "separately entertain a motion for attorney's fees as provided by the statute for wilful violations." It stated that it would not enter judgment until the resolution of any attorney's fees motion.

On February 22, 2019, the plaintiffs filed an application for attorney's fees and attached an affidavit in which Attorney Morris R. Borea averred to counsel fees in the amount of $51,674 and expenses in the amount of $1039.18. On March 8, 2019, the defendant filed an objection to the plaintiffs' application for attorney's fees. On April 24, 2019, the court held a hearing on the application for attorney's fees. That same day, the court awarded the plaintiffs attorney's fees and costs as requested. This appeal followed.[13]

I

We first turn to the defendant's claim that the February 24, 2017 cease and desist order premised on her alleged zoning violation is unconstitutionally vague, in that it "was not clear as to the conduct [the] defendant must cease." We first conclude that the defendant's claim is unpreserved because she did not raise it before the trial court. Furthermore, we do not review her unpreserved claim pursuant to our bypass doctrines[14] because, even had she presented her claim to the trial court, the trial court would have lacked jurisdiction over it on the basis that she failed to exhaust her administrative remedies.

The following additional facts and procedural history are relevant to the defendant's claims on appeal. As noted previously, the defendant did not appeal the February 24, 2017 cease and desist order to the zoning board of appeals. In response to the filing of the complaint in this enforcement action, the defendant filed an answer and special defenses, in which she asserted, inter alia, that "[t]he notice of violations at issue are unconstitutionally vague in that they do not state whether or not [the] defendant is actually being penalized on a daily basis or in what amount."[15] The defendant

did not assert as a special defense the claim that she raises before this court on appeal, which is that the February 24, 2017 cease and desist order was unconstitutionally vague in that it "was not clear as to the conduct [the] defendant must cease." Nor did she identify an issue with respect to the constitutionality of the cease and desist order in the parties' trial management report.[16] The defendant testified at trial as to her understanding that the cease and desist order "relat[ed] to the fire and the debris from the fire" and that "I don't know what [the order is] talking about, secondhand material. Anything that's on my property has been damaged by the fire or is my own personal property." There is nothing in her testimony or her counsel's closing argument evidencing that a claim of unconstitutional vagueness was raised before the trial court. Therefore, we conclude that her claim is unpreserved.

Moreover, we need not reach her unpreserved constitutional claim through any of our bypass doctrines because we conclude that, even if she had raised this claim before the trial court, it would have lacked subject matter jurisdiction over the claim. The doctrine of exhaustion of administrative remedies "implicates the subject matter jurisdiction of the Superior Court . . . ." *Wethersfield* v. *PR Arrow, LLC*, 187 Conn. App. 604, 624, 203 A.3d 645, cert. denied, 331 Conn. 907, 202 A.3d 1022 (2019). "It is well established that [w]hen a party has a statutory right of appeal from the decision of an administrative officer or agency, he [or she] may not contest the validity of the order if [the administrative] officials seek its enforcement in the trial court after the alleged violator has failed to appeal." (Internal quotation marks omitted.) *Sams* v. *Dept. of Environmental Protection*, 308 Conn. 359, 397, 63 A.3d 953 (2013); see also *Gelinas* v. *West Hartford*, 225 Conn. 575, 595, 626 A.2d 259 (1993) ("[W]hen a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test. . . . Likewise, the validity of the order may not be contested if zoning officials seek its enforcement after a violator has failed to appeal." (Citations omitted; internal quotation marks omitted.)). "The exclusive remedy to object to a cease and desist order is an administrative appeal to a zoning board of appeals and potentially to the Superior Court, pursuant to General Statutes §§ 8-6, 8-7 and 8-8." *Ammirata* v. *Zoning Board of Appeals*, 81 Conn. App. 193, 202, 838 A.2d 1047, cert. denied, 268 Conn. 908, 845 A.2d 410 (2004). Section 8-6 (a) (1) provides that the zoning board of appeals shall have the power "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement" of the zoning regulations. See also *Piquet* v. *Chester*, 306 Conn. 173, 185, 49 A.3d 977 (2012) ("[w]hen a landowner

receives notice from a zoning compliance officer that the landowner's existing use of his or her property is in violation of applicable zoning ordinances or regulations, that interpretation constitutes a decision from which the landowner can appeal to the local zoning board of appeals pursuant to § 8-7 and, when applicable, pursuant to local zoning regulations").

On appeal, the defendant seeks to challenge the February 24, 2017 cease and desist order by claiming that it is unconstitutionally vague because the parties disagreed as to the conduct to which it applied. The defendant states that the plaintiffs' counsel "apparently thought it pertained to the debris strewn backyard from when the state police ordered her to empty the contents of her shed onto her lawn . . . [the] defendant thought it pertained to the debris from the fire which meant her burnt down house and personal property blown through the windows of the second floor of her house by powerful fire hoses [and] the court thought it pertained to her depositing personal property she recovered from cleaning out foreclosed homes because it fined her for the same." We conclude that the broad grant of power in § 8-6 (a) (1) would have conferred on the zoning board of appeals the power to decide the validity and application of the cease and desist order. The defendant thus would have been required to exhaust that administrative remedy before raising such a claim in this enforcement action. See *Wethersfield* v. *PR Arrow, LLC*, supra, 187 Conn. App. 627 (court lacked jurisdiction over defendant's claim that zoning enforcement officer exceeded authority in issuing cease and desist order on basis of failure to exhaust administrative remedies where defendant appealed from cease and desist order to zoning board of appeals but withdrew the appeal). It is undisputed that the defendant did not appeal the February 24, 2017 cease and desist order identifying a zoning violation at the property.

Although the defendant testified at trial to the effect that she was prevented from appealing the February 24, 2017 notice of violation *with respect to the town's blight ordinance*, her testimony was specific to that notice, in that she maintained that town officials had informed her that the town had a new blight appeal board that would be taking appeals but was not in place yet.[17] She made no such claim as to the February 24, 2017 cease and desist order based on her zoning violation. In closing argument before the trial court, the following exchange occurred:

"[The Plaintiffs' Counsel]: So with regard to that, they didn't file a zoning appeal. The law is clear. They're stuck with that violation. The facts support the violation and it's existed until today.

"The Court: Let me ask [the defendant's counsel] to respond on the zoning matter purely.

"[The Defendant's Counsel]: Okay.

"The Court: So if the thing says you're in violation of the zoning, and let's say you do, you're [a] reasonable person, you claim there's a hardship because your place is burned out, you're waiting for the insurance proceeds. Wouldn't the proper thing to do would be to go to the ZBA and appeal and claim a hardship for the zoning part, not the blight?

"[The Defendant's Counsel]: Yes, I understand, Your Honor. But you have to understand, first of all, she lost everything, the house burned down, she's living in a motel, she has no insurance proceeds. She doesn't have the—whatever access she has to the Internet is extremely limited, has just the clothes on her back when she walked out of that house. And in addition, Your Honor, the property is a crime scene. She was not allowed to touch anything. So I don't know how she could—

"The Court: You're missing the question. I want you to go back to the question.

"[The Defendant's Counsel]: Yes.

"The Court: Which is what reasons should be excused from appealing? And what you're telling me is, in other words, is that this was a terrible time in her life and she should be excused from it for that reason.

"[The Defendant's Counsel]: She made—you know, all I can say is she made a reasonable attempt to appeal it and it seems—

"The Court: I'm sorry. She made a reasonable attempt to appeal the zoning thing? The zoning thing says you appeal and there's a process to do it. And she seeks—

"[The Defendant's Counsel]: I'm thinking of the blight, Your Honor.

"The Court: That's my point. I understand the argument on the blight. I'll take notice of that."

Accordingly, the defendant did not argue that she was prevented from filing an appeal of the February 24, 2017 cease and desist order identifying a zoning violation.[18]

We acknowledge that "[o]ur Supreme Court has recognized a narrow exception for claims of constitutional dimension . . . that applies when the challenge is to the constitutionality of the statute or regulation under which the board or agency operates, rather than to the actions of the board or agency. . . . That exception to the exhaustion requirement also applies when a defendant raises the constitutional validity of a municipal [zoning] ordinance [as a defense to] an action to enforce its provisions against [the defendant]." (Citations omitted; internal quotation marks omitted.) *Wethersfield* v. *PR Arrow, LLC*, supra, 187 Conn. App. 629.

In the present case, the defendant has not alleged any constitutional defect in the regulations whose enforcement is at issue. Rather, the defendant's challenge is to the actions of Oliva in issuing the cease and desist order, which challenge would be beyond the narrow purview of the constitutional exception. See id., 630 (special defense alleging that cease and desist order issued by zoning enforcement officer was unconstitutional and impermissibly vague constituted challenge to action of enforcement officer in issuing the order and did not qualify under constitutional exception to exhaustion requirement). Accordingly, the defendant would have been required to exhaust her administrative remedies before raising in this enforcement action her claim challenging the cease and desist order, which she indisputably did not do. Thus, the trial court would have lacked subject matter jurisdiction over such a claim, and, therefore, we do not reach her unpreserved claim.

## II

We next turn to the defendant's claim that the court erred in failing to conclude that she was justified in not cleaning the property following her receipt of the February 24, 2017 cease and desist order on the basis that she "had been instructed by both the Connecticut State Police and her insurance carrier not to touch or remove any of the personal property located in the backyard . . . ." The entirety of the plaintiffs' argument in response is that they "strongly [disagree] that [the defendant] had 'legal justification' to ignore the [cease and desist] letter." They maintain, however, that if this court accepts that the defendant cannot be held liable for violations during the pendency of the investigation, "such investigation cannot excuse her violations for the other years of noncompliance."

The defendant's claim essentially challenges the trial court's imposition of fines for the time period during which she was under orders not to disturb the property. "Our question in reviewing a decision regarding . . . daily fines pursuant to § 8-12 is whether the court abused its discretion." (Internal quotation marks omitted.) *Stamford* v. *Stephenson*, 78 Conn. App. 818, 824–25, 829 A.2d 26, cert. denied, 266 Conn. 915, 833 A.2d 466 (2003). "[Section] 8-12 does not require a court to impose fines and to award attorney's fees. . . . Although § 8-12 provides in relevant part that '[t]he owner or agent of any building or premises where a violation of any provision of [the zoning] regulations has been committed . . . shall be fined not less than ten nor more than one hundred dollars for each day that such violation continues,' this court has held that the use of 'shall' in § 8-12 does not create a mandatory duty to impose fines. . . . Rather, a court has discretion to impose such fines, as the circumstances require." (Citation omitted.) Id., 825–26. "Our review of the trial

court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Internal quotation marks omitted.) Id., 825.

The following additional facts and procedural history are relevant to our consideration of this claim. The defendant asserted as a special defense "legal impossibility" in that she was instructed by the state police "to remove certain personal property from the improvements and place the same on the lawn outside while the [arson] investigation continued for the next [eighteen] months." She further asserted that her insurer "specifically instructed the defendant not to touch any of the personal property either inside or outside of the structures, or to touch the structures themselves, while their investigation continued." The plaintiffs denied the defendant's special defense.

The following evidence was presented at trial in support of the defendant's defense that she was unable to remediate the zoning violation at the property. The defendant testified that, following the fire on December 6, 2016, an arson investigation continued into 2018. She additionally testified that she was instructed not to touch *anything* on the property for a few months during the police investigation. She testified that "after that was concluded my insurance company told us not to touch it because they had to determine what property was damaged and what they were going to pay. So they had to see the whole contents and everything that was being claimed, so we were not to remove anything."

This testimony was supported by written claim comments prepared by representatives of her insurer (claim comments), which were entered into evidence as a full exhibit without objection from the plaintiffs. Those claim comments indicate that town officials had contacted the defendant's insurer to communicate their belief that the fire was set intentionally. For example, a December 13, 2016 entry provided: "Deputy Fire Marshal believes [the fire] may be incendiary and needs a[n] origin and cause to review."[19] Another entry dated December 28, 2016, states that "Mauldin believes the fire was intentionally set; he does not know who started the fire." A February 3, 2017 entry states that "the fire marshal and . . . Thompson have concluded the fire is arson."[20]

The claim comments suggest that it was not until May 1, 2017, that the insurer determined that "the fire damage is a covered loss under this policy."[21] Moreover, an October 31, 2017 e-mail from an attorney representing the defendant's insurer to the defendant's counsel

requested that the defendant "not discard any unusable and/or damaged possessions [she is] claiming in this matter." The e-mail also advised that the insurer "will be scheduling a reinspection shortly."

Despite evidence in the record that certain town officials believed the fire was a result of arson and had communicated that belief to the defendant's insurer, the two town officials who testified at trial, Oliva and Oatis, both stated that they were unaware that the property was a crime scene. Specifically, Oliva testified that she had "no knowledge" that the property became a crime scene, and Oatis testified that she was not aware that the property was declared a crime scene. Moreover, Oliva testified that she "d[id] not know" when the fire investigation was concluded, and she had "no knowledge of" a fire marshal having made an allegation of arson. At oral argument before this court, the plaintiffs' counsel acknowledged that an arson investigation was conducted and that the defendant was told not to touch the crime scene for a period of time, which time period he believed extended to April, 2017.

Following its conclusion that the defendant had been violating the zoning regulations since February 24, 2017, the court, in setting penalties, acknowledged and considered the defendant's "claim that she has been financially handicapped by the town's claim against her insurance proceeds and what proved to be baseless accusations by the fire marshal of arson on her property." It did not, however, factor into its penalties assessment the effect of the arson investigation on the defendant's ability to comply with the February 24, 2017 cease and desist order. By way of that order, the defendant was directed to "cease the deposition of discarded and/or second-hand material on the property." Because the record contains undisputed evidence, and the plaintiffs' counsel acknowledges that the defendant was prohibited for some period of time following February 24, 2017, by her insurer and the police from removing items from the property, we conclude that the court abused its discretion in imposing fines beginning on February 24, 2017. "It is axiomatic that this court, as an appellate tribunal, cannot find facts." *Welsh* v. *Martinez*, 191 Conn. App. 862, 884, 216 A.3d 718 (2019). We therefore are not at liberty to resolve the question of precisely what date the defendant regained control of her property following the conclusion of the police and insurance investigations. Accordingly, a remand to the trial court for a new trial on the zoning violation is necessary.

Because the attorney's fees award and injunction flow from the judgment in favor of the town, both necessarily are reversed together with the judgment.[22] See General Statutes § 8-12 ("[i]f the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs,

together with reasonable attorney's fees to be taxed by the court").

### III

It is appropriate for us to give guidance on issues that are likely to recur on retrial because of our conclusion that this case must be remanded for a new trial. See *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 164, 971 A.2d 676 (2009). We therefore will address the defendant's claim that the court improperly assessed a fine for the wilful violation of zoning regulations pursuant to § 8-12. Specifically, citing *Gelinas* v. *West Hartford*, supra, 225 Conn. 575, the defendant argues that because she was not convicted of any criminal offense, the court's imposition of a $175 daily fine was improper. We agree.

Section 8-12 provides in relevant part: "The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists . . . or the owner . . . who maintains any building or premises in which any such violation exists, shall be fined not less than ten dollars or more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars or more than two hundred fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues not to exceed a maximum of thirty days for such violation, or both . . . ."

Our Supreme Court in *Gelinas* v. *West Hartford*, supra, 225 Conn. 593, stated: "Section 8-12 unambiguously provides for both civil and criminal remedies. It does not, however, authorize a court to impose the same penalties in a civil proceeding that it could impose in a criminal proceeding." The court emphasized "the necessity for a criminal prosecution as a predicate for the imposition of fines for a 'wilful violation.' "[23] Id. This court subsequently added to that discussion. "As the statute states, for violations of the regulations, a person shall be fined not less than $10 nor more than $100 for each day that the violation continues. That portion of the provision refers to a civil proceeding, one that does not require a finding of wilfulness or a criminal conviction. . . .

"On the other hand, the statute provides that if an offense is wilful and the person *is convicted thereof*, the amount of the fine is to be more than $100 per day, but not more than $250 for each day. According to Black's Law Dictionary (6th Ed. 1990), to convict means '[t]o find a person guilty of a criminal charge, either upon a criminal trial, a plea of guilty, or a plea of nolo contendere. . . .' The use of the word 'convicted,' demonstrates that the legislature distinguished between civil and criminal proceedings. The imposition of an

elevated fine upon conviction manifests the legislature's intent to impose a different and greater penalty on those 'convicted' in a criminal proceeding." (Emphasis added.) *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 280, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001).

In the present case, the court imposed a fine of $175 per day on the basis of its determination that the defendant wilfully had violated the town's zoning regulations. There is nothing in the record to suggest, and the plaintiffs do not contend, that the defendant had been convicted of any offense in a criminal proceeding. Accordingly, the daily fine of $175 was improper.

The judgment is reversed as to count two alleging a zoning violation and the case is remanded for a new trial consistent with this opinion on that count; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Michael Lanata was also named as a defendant in this action. On February 11, 2019, Michael Lanata was defaulted for failure to plead. He is not participating in this appeal, and we therefore refer to Kristin Lanata as the defendant.

[2] For clarity, in this opinion we refer to the town and Oliva collectively as the plaintiffs and individually by name.

[3] In her principal appellate brief, the defendant asserts five claims of error. For ease of discussion, we discuss the defendant's first three claims in a different order than they appear in the defendant's appellate brief.

The defendant's fourth claim asserts that the court erred in issuing an injunction that exceeded the scope of the relief sought by the plaintiffs. See footnote 19 of this opinion. The defendant's fifth claim asserts that the court's award of a fine in the amount of $125,000 and attorney's fees in the amount of $51,674 violates the excessive fines clause of the eighth amendment to the United States constitution. We resolve this appeal in favor of the defendant on the basis of her claim that the court improperly imposed fines for some period of time during which she was under orders not to disturb the property. See part II of this opinion. In light of this resolution, we need not resolve the defendant's fourth and fifth claims.

[4] As to the defendant's claim that the court misapplied § 8-12 in assessing a fine for the wilful violation of zoning regulations, we address this claim because it is likely to arise on remand. See part III of this opinion.

[5] Neither party has challenged on appeal the court's ruling as to count one of the complaint, which alleges violation of the town's blight ordinance. As to that count, the court concluded that "the defendant . . . was running a salvage business which violated the South Windsor blight ordinance, but that the town's ordinances were unclear how a blight fine is imposed and with no provision for adequate notice of it being imposed . . . ." Accordingly, the court did not grant the plaintiffs relief under count one. Because neither party challenges on appeal the court's ruling on count one of the complaint, our remand is limited to a new trial on count two only.

[6] The ordinance in effect at the time of the May 2, 2014 letter included in its definition of blighted property, a "residential or commercially zoned property . . . . containing accumulated debris . . . ." South Windsor Code of Ordinances, No. 195, § 3 (f) (1) (2012). The ordinance defined debris as "[m]aterial which is incapable of immediately performing the function for which it was designed including, but not limited to abandoned, discarded, or unused objects, junk comprised of equipment such as automobiles, boats, and recreation vehicles which are unregistered and missing parts, not complete in appearance and in an obvious state of disrepair; parts of automobiles, furniture, appliances, cans, boxes, scrap metal, tires, batteries, containers, and garbage which are in the public view." South Windsor Code of Ordinances, No. 195, § 3 (2012).

[7] In September, 2014, a certificate of blight lien was recorded in the land records. It stated: "The lien created by this certificate will secure payment of a debt resulting from a Blight Violation pursuant to Blight Ordinance No.

195 (the 'Ordinance') and the cost associated with remediation at the property by the Town of South Windsor. The principal amount of said lien as of September 9, 2014 is $2,000.00, together with any other costs and reasonable attorney fees, and said principal amount will increase by $100 for each day the violation continues, and will remain due on the property and have a priority over all other liens (except real property taxes) pursuant to the [o]rdinance and . . . General Statutes §§ 7-148aa and 52-351a."

[8] Oliva testified that the property is zoned rural residential. Article 3, § 3.1.1 of the South Windsor Zoning Regulations (regulations) provides in relevant part that "[u]ses within residential zones shall be governed by Table 3.1.1A." According to Table 3.1.1A, neither a junkyard nor a salvage operation is permitted in a rural residential zone. Article 10, § 10.3, of the regulations defines a junkyard as "[a]ny place in or on which old metal, glass, paper, cordage, or other waste or discarded or second-hand material, which has not been a part of, or is not intended to be a part of, any motor vehicle, is stored or deposited."

[9] The provisions of the ordinance cited by Oliva are as follows:

"Blighted structure shall mean any building or structure or any part of a building or structure, including, but not limited to, a separate unit attached or connected thereto, as well as the land, parking areas and other improvements to the real property where the building or structure is located, in which at least one of the following conditions exist as determined by the Town Manager or Zoning Enforcement Officer:

"(a) Failure to maintain the building or structure (including the land, parking areas and other improvements to the real property where the building or structure is located); factors that may be considered to determine whether a property is being maintained include, but are not limited to, missing or boarded windows or doors; collapsing or missing walls, roof or floor; siding that is seriously damaged or missing; fire damage; a foundation that is structurally faulty; improperly stored garbage, trash, debris or abandoned or junk vehicles located thereon; dilapidation such that the property is deteriorated to the extent that it would not receive a certificate of occupancy if applied for.

"(b) Attraction of illegal activity or attractive nuisance.

"(c) Fire hazard or fire damage that has not been corrected or repaired for a period of 60 days.

"(d) Existence or use that creates a substantial and unreasonable interference with the reasonable and lawful use and enjoyment of other space within the building or of other properties within the neighborhood as documented by neighborhood complaints or by the cancellation of insurance on other properties in the neighborhood. . . .

"(g) One or more unregistered motor vehicles (including trailers) in the public view, pursuant to Section 14-150a of the Connecticut General Statutes;

* * *

"Dangerous structure shall mean any building or structure or any part of a building or structure, including, but not limited to, a separate unit attached or connected thereto, including, but not limited to, a separate unit attached or connected thereto, as well as the land, parking areas and other improvements to the real property where the building or structure is located, in which at least one of the following conditions exist as determined by the Town Manager or Enforcement Officer:

"(a) Conditions that pose a serious or immediate danger to occupants, users or the public that puts their health, safety and welfare at risk. . . .

"(d) Damage caused by fire, wind or a natural cause to the extent that the structure no longer provides shelter from the elements and is dangerous to the health, safety and welfare of its occupants or users or the public.

"(e) Dilapidated, decayed, unsafe, unsanitary or vermin-infested conditions that are likely to cause sickness or disease or injury to the occupants or users or the public.

* * *

"Nuisance shall mean:

"(a) A blighted structure as defined herein where there exists any condition that is a danger to the health, safety and welfare of the public;

"(b) A dangerous structure as defined herein where there exists any condition that is a danger to the health, safety and welfare of the public; or

"(c) Any other vacant or improved real property where there exists any condition that is a danger to the health, safety and welfare of the public, including, but not limited to: . . .

"(4) The accumulation of debris in such manner as may adversely affect the health, safety and welfare of the public. . . ." South Windsor Code of

Ordinances, c. 50, art. IV, § 50-93 (2016).

The ordinance was amended in 2016 to remove from the definition of debris the requirement that it be "in the public view." South Windsor Code of Ordinances, No. 207, § 3 (f) (1) (2012). See footnote 6 of this opinion.

[10] Chapter 50, art. IV, § 50-99, of the South Windsor Code of Ordinances provides: "(a) *Penalties*: (1) Each violation of this article shall be considered a separate municipal offense. (2) Each day any violation continues shall constitute a separate offense. (3) Each separate offense under this ordinance shall be punishable by a fine of $100.00 payable to the Town of South Windsor.

"(b) *Enforcement*: (1) The town manager, enforcement officer, or any police officer in the Town of South Windsor is authorized to issue a citation or summons for a violation of this ordinance. (2) In addition thereto, the town manager is authorized to initiate legal proceedings in the superior court for the immediate correction of the violation(s), collection of any penalties, and the recovery of all costs including costs of remedial action, court and the reasonable attorney's fees incurred by the Town of South Windsor to enforce this ordinance. Further, the town manager or enforcement officer are authorized to take such immediate action as may be provided herein. (3) All fines, court costs, costs of remedial action, and attorney's fees, as ordered by the court, shall constitute a lien on the subject premises, provided the owner, lessee, or occupant of said premises has been notified of the violations as herein provided."

[11] It is unclear from the court's memorandum of decision why, when the plaintiffs had requested fines of $100 per day pursuant to § 8-12, the court awarded nearly double that amount, $175 per day.

[12] On February 21, 2019, the defendant filed a motion to reargue and for reconsideration, asking the court to vacate the fine assessed against her. She argued that the $125,000 fine was excessive and disproportionate to the wrong at issue, citing *Timbs* v. *Indiana*,      U.S.      , 139 S. Ct. 682, 693, 203 L. Ed. 2d 11 (2019). On March 5, 2019, the plaintiffs filed an objection to the defendant's motion to reargue and for reconsideration, arguing that the motion was not properly before the court in that the court had not yet rendered judgment in the case and that the motion "simply rehashed the unsuccessful arguments that she previously made." On March 18, 2019, the court denied the motion, stating that "[e]ven if properly filed the motion reflects mere disagreement with the size of the fine."

[13] At oral argument before this court, the plaintiffs' counsel argued that because the defendant has "cleaned up" the property, three of the defendant's claims on appeal—that the cease and desist order was unconstitutionally vague, that the defendant was justified in not complying with the cease and desist order, and that the injunction was overbroad—are moot. "Mootness is a question of justiciability that . . . implicates [this] court's subject matter jurisdiction. . . . Mootness . . . rais[es] a question of law over which we exercise plenary review. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if an appellate court cannot grant the appellant any practical relief through its disposition of the merits." (Citation omitted; internal quotation marks omitted.) *Wilcox* v. *Webster Insurance, Inc.*, 294 Conn. 206, 221–22, 982 A.2d 1053 (2009).

We fail to see how "cleaning up" the property renders any of the defendant's claims on appeal moot. Because her claims on appeal all foundationally relate to the February 24, 2017 cease and desist order and the fines and injunction emanating therefrom, counsel's assertion of mootness fails.

[14] See Practice Book § 60-5; *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)..

[15] The defendant asserted seven special defenses, including that "[a]ll of [the] plaintiffs' claims which originate on or before the filing of her petition for relief [under chapter 7 of the Bankruptcy Code] have been discharged and are in violation of her order of discharge"; "[t]he plaintiff failed to follow [General Statutes] § 8-12a because no citation has ever been issued to this defendant by the plaintiff"; "it was legally impossible for the defendant to comply with any order or notice from the plaintiff to repair or otherwise rebuild the fire damaged home or to remove any of the personal property set out on the lawn outside" due to the pendency of the arson investigation; the bank holding the mortgage on the defendant's home "refused to tender

any of the insurance proceeds over to the defendant while claims of arson were being investigated, thereby making it impossible for the defendant to repair the fire damaged home"; "[t]he blight liens are void because [the] plaintiff failed to comply with [General Statutes § 49-73b (b) for failure to give notice to the defendant in the manner as provided in [General Statutes] § 49-34 and [the] plaintiff failed to record said liens in a timely manner as also required by § 49-73b"; and "[t]he complaint fails to state a claim upon which relief can be granted."

[16] In the parties' trial management report, the defendant identified, as disputed issues: "1. Is the defendant liable for violations of the blight ordinance? 2. Is it equitable for the court to compel the defendant to remediate a fire damaged home when the insurance proceeds are tied up in litigation as a result of the plaintiffs' actions? 3. Was the defendant properly cited for violations alleged in the complaint? 4. Is the plaintiff acting in good faith? 5. Did the defendant already comply by cleaning up the subject property?"

[17] The following exchange occurred between the plaintiffs' counsel and the defendant:

"Q. All right. And when you received this letter dated February 24th of 2017—

"A. Yes.

"Q. —did you refer to the blight ordinance to see the citations that are in the letter as to what they meant?

"A. I actually went into the town to fill out an appeal when I received that letter. And Pam Oliva, I think that's how you pronounce that last name, she was not in, and I spoke with Michelle Lipe and Chris Dougan. Because of the new ordinance they said they had a new blight appeal board that would be taking any appeals. They didn't think that it was in place yet; they didn't know what forms to give me; there was no form included with that letter to appeal. Nobody knew how to appeal it. They said Pam would have to get back to me when she came in; I think she was coming in the following week; she was out. They never got back to me. I sent a letter requesting that I had never heard back from anybody for the appeal, and then I received a letter from the town saying it's too late, I could not appeal it.

"Q. All right. So you got this letter, you were aware of what was in the blight ordinance because you had reviewed it and, in fact, you attempted to appeal this notice. Is that correct?

"A. Well, I did because it's virtually—it's impossible—the investigation started with the fire with the arson claim in January, and they determined it was the pellet stove in February. And then on February 2nd the town of South Windsor, Corporal Michael Thompson called and said absolutely not, it's arson, we're not agreeing to this; you need to continue the investigation. So I was under a criminal investigation that continued into 2018, and I could not do anything at the property while it was considered a crime scene at the time. Mind you, the arson—was found that it wasn't arson, but it took to 2018. It was impossible for me to comply with that blight order when you had just started a criminal investigation on me and the property.

"Q. All right. So that's what your testimony is. So you did not attempt to comply with it because it was impossible for you to comply with.

"A. Well, that was going to be my appeal.

"Q. That was going to be the basis of the appeal.

"A. The appeal.

"Q. But you understand—tried to file it too late?

"A. They didn't have the forms at the town to do it and they didn't have—they didn't know who the antiblight board was and [Oliva] was not in."

[18] In her principal brief on appeal, the defendant states that she "attempted to appeal the zoning notice but was thwarted by the plaintiff who had yet to install a blight board or procedures for an appeal."

[19] A previous entry, also on December 13, 2016, states that "David M— deputy fire marshal" called to speak to the adjuster regarding the claim. A subsequent entry refers to David Mauldin as the deputy fire investigator.

[20] Thompson is elsewhere referred to in the claim comments as "the city fire investigator Mike Thompson."

[21] At oral argument before this court, the plaintiffs' counsel referred the court to an April 19, 2017 entry, which summarizes the findings of the cause and origin report, including that the cause classification of the fire was determined to be accidental. The plaintiffs' counsel acknowledged that the April 19, 2017 entry did not state that the information was communicated to the defendant but he represented that a subsequent entry in May, 2017, suggested that payment instructions regarding the loss payment were communicated to the defendant.

[22] The defendant claims on appeal that the court's injunction exceeded the scope of the relief sought by the plaintiffs. Specifically, she challenges the court's order enjoining her from using her property to "[park] overnight or [store] for any period of time, commercial vehicles, machinery, tools or other equipment she uses for business purposes." Because we have reversed the judgment and remanded for a new trial, we need not address this argument.

We note briefly, however, that the defendant has raised serious concerns about the scope of the injunction. In the plaintiffs' complaint, they sought "[a]n injunction ordering the defendants to perform immediately the corrective actions pursuant to the notices of violation and cease and desist order to bring the property in compliance with the blight ordinance and zoning regulations." The February 24, 2017 cease and desist order identifies the type of zoning violation as "[s]torage of discarded or second-hand material, creating a junkyard in violation of Table 3.1.1A Permitted Uses in Residential Zones." The corrective action required in the February 24, 2017 letter is to "immediately cease the deposition of discarded and/or second-hand material on the property."

In its memorandum of decision, the trial court stated: "South Windsor is on firm footing with its zoning regulations. It doesn't need the blight ordinance to win an injunction here. Nevertheless, *for penalty purposes* the court finds [the defendant] in violation of the town's blight ordinance." (Emphasis added.) Accordingly, the injunction issued by the court was specific to the zoning violation. We note that nowhere in the February 24, 2017 cease and desist order did the town order the defendant to cease parking overnight any commercial vehicles. Although we need not address whether the court abused its discretion in enjoining the defendant from parking overnight any commercial vehicles, we merely note our serious concerns with respect to the scope of the injunction.

[23] In their brief, the plaintiffs argued that the trial court had "discretion to issue a civil fine within the $100-$250 range." At oral argument before this court, however, the plaintiffs' counsel conceded that *Gelinas* provides that in order to impose a fine greater than $100 per day, there needs to be a criminal conviction as a predicate fact. Although we note the plaintiffs' apparent disagreement with *Gelinas*, we are bound by our Supreme Court's interpretation of § 8-12 therein. "[I]t is axiomatic that this court, as an intermediate body, is bound by the decisions of our Supreme Court." *109 North, LLC* v. *Planning Commission*, 111 Conn. App. 219, 232 n.9, 959 A.2d 615 (2008).